JOHN J. GILLILAN ET AL. V. JOHN A. ROLLINS.

FILED JUNE 26, 1894.    No. 5565.

1. **Damages:** STIPULATION OF AMOUNT FOR BREACH OF CONTRACT: CONSTRUCTON. When parties to a contract stipulate that in case of a violation thereof the party making default shall pay to the other a stipulated sum, the courts will take the sum so fixed as the innocent party's measure of damages only when it appears that to do so will no more than compensate his losses.

2. ——: ——: ——. But in such case if the taking as the measure of damages the sum fixed in the contract to be paid for its breach will more than compensate the innocent party, the court will regard such sum as a penalty.

3. ——: ——: ——. It is not the policy of the law to punish a party for violating his contract, but to compel him to make good to others the losses they have sustained by his default.

4. ——: ——: ——: LIQUIDATED DAMAGES OR PENALTY. The courts, in determining whether a sum fixed by a contract to be paid for its violation is liquidated damages or a penalty, will take into consideration the subject-matter of the contract, the consideration on which it is based, the intention of the parties, and the language of the contract; but these facts, nor any of them, nor all of them, will not necessarily control the court's construction.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*Leese & Stewart,* for plaintiffs in error:

The sum stipulated to be paid on a breach of the agreement was intended between the parties as liquidated damages. The jury should have been instructed accordingly. (1 Pomeroy, Equity Jurisprudence [2d ed.], secs. 440–445; 3 Parsons, Contracts [8th ed.], p. 156; 2 Sedgwick, Measure of Damages [7th ed.], p. 243, note *a*; Bispham, Principles of Equity [4th ed.], sec. 179; *Chase v. Allen,* 13 Gray [Mass.], 45; *Cushing v. Drew,* 97 Mass., 445; *Grasselli v. Lowden,* 11 O. St., 349; *Gobble v. Linder,* 76 Ill., 157; *Peine v. Weber,* 47 Ill., 47; *Morse v. Rathburn,* 42 Mo., 594.)

*Davis & Hibner, contra,* cited: *Brennan v. Clark,* 29 Neb., 385; *Squires v. Elwood,* 33 Neb., 126.

RAGAN, C.

On the 29th day of December, 1888, John A. Rollins duly executed and delivered to John J. Gillilan and Aldridge D. Kitchen a writing obligatory, in words and figures as follows:

"I, John A. Rollins, of the city of Lincoln, Nebraska, for a good and valuable consideration, am held and firmly bound unto John J. Gillilan and A. D. Kitchen in the penal sum of five thousand (5,000) dollars, for the payment of which I bind myself, my heirs, administrators, and executors firmly by these presents, upon conditions as follows, to-wit: First—That I build the line of the Capitol Heights Street Railway Company on E street in the city of Lincoln, Nebraska, to Twenty-seventh street on or before May 1, 1889. Second—That I operate said railway for three years, from May 1, 1889, from said Twenty-seventh over said E street to the corner of Twelfth and O streets, in said city of Lincoln, giving at least one-half hour service from 7 o'clock A. M. to 7 o'clock P. M. each day, excepting Sundays, and on Sundays at least one hour

service from 9 o'clock A. M. to 7 P. M. Third—That I commence operating said line on said E street on or before May 1, 1889. Therefore, if I, John A. Rollins, the above bounden, shall faithfully and fully perform and carry out all of the above conditions and agreements, then this obligation to be void; otherwise to remain in full force and effect.

"Witness my hand hereto subscribed this 29th day of December, 1888.          JOHN A. ROLLINS."

John J. Gillilan and Aldridge D. Kitchen brought this suit on this contract against John A. Rollins in the district court of Lancaster county, alleging in their petition, in substance, that at and before the time of the execution of said writing by said Rollins they were the owners of certain real estate laid out in an addition to the city of Lincoln; that the construction and operation of a street railway along and adjacent to their property and connecting it with the business portion of Lincoln would greatly enhance its value. For the purpose of procuring the operation and construction of such line of railway along and through their property the agreement quoted above was entered into between them and Rollins; that they were at the time engaged in the business of buying and selling real estate for profit; that they held the lots of their addition for sale; that they transferred and assigned to said Rollins forty-four shares of stock in said street railway company of the par value of $4,400; that Rollins did not complete the street railway on E street to Twenty-seventh on' or before May 1, 1889; that the service given by Rollins was not half hour service, but was very irregular; that the cars were not run on any schedule time, but would vary from one-half hour to six hours in making runs, and on many occasions the operation of the railway was wholly abandoned for days at a time; that on May 1, 1891, Rollins wholly abandoned and discontinued the operation of the railway; that by reason of Rollins' failure to perform

his contract their real estate had become less desirable for residences, and had greatly depreciated in value; that they had been deprived of opportunities to sell the same, and had been compelled to take back a large number of lots which they had already sold on the assurance that the street railway would be properly operated; and they prayed judgment against Rollins for the sum of $15,000. The answer of Rollins to this petition was, in effect, a denial that he had in any respect violated his contract with the plaintiffs; that the street railway stock assigned by them to him was of any value whatever, and he further averred that he had fully and faithfully performed all the conditions of his agreement. Gillilan and Kitchen had a verdict for one dollar, and from the judgment pronounced thereon they prosecute to this court a petition in error. The eight errors assigned by them we notice as follows :

1. The third error alleged is in the following language: "The court erred in giving paragraphs 2, 3, 4, 5, and 6 of the instructions on its own motion." An examination of the record discloses the fact that one of the instructions excepted to was properly given, and the other instructions will not be reviewed for the purpose of ascertaining if the court erred in giving them or any of them.

2. The eighth error alleged is in the following language: "Error of law occurring at the trial." Under the well settled practice of this court, time and again announced, this assignment is too indefinite for review.

3. The fourth error assigned is as follows: "The court erred in refusing to give paragraph 2 of instructions asked by plaintiffs." That instruction is in the following language: "In this case you are instructed that if you find from the evidence that there has been a substantial breach of the condition of the bond on the part of the defendant, then you will find for the plaintiffs and fix the amount of their recovery at the sum of $5,000." This instruction was framed upon the theory of counsel for plaintiffs in

error, that the sum of $5,000 promised by Rollins in his bond to be paid to Gillilan and Kitchen in case he failed to keep his contract with them is not a penalty, but is in the nature of liquidated damages. In other words, the argument of counsel is that it was intended by the parties to this suit that in case Rollins failed to comply with his contract, he should pay that sum to Gillilan and Kitchen as compensation for the damages that they would or might suffer by reason of Rollins' default. We do not agree to this construction of this contract. The reported decisions in which contracts of this nature are construed are very numerous and the conclusions reached by the courts very conflicting, and it would subserve no useful purpose to collate or review these authorities. We think that the better rule, and the one supported by the weight of authority, is, when parties to a contract stipulate that in case of a violation thereof the party making default shall pay to the other a stipulated sum, the courts will take the sum so fixed as the innocent party's measure of damages, only when it appears that to do so will no more than compensate his loss; but if taking as a measure of damages the sum fixed in the contract to be paid for its breach will more than compensate the innocent party, the courts will regard the sum a penalty. It is not the policy of the law to punish a party for violating his contract but to compel him to make good to others the losses they have sustained by his default. The courts, in determining whether a sum fixed by a contract to be paid for its violation is liquidated damages or a penalty, will take into consideration the subject-matter of the contract, the consideration on which it is based, the language of the contract, and the intention of the parties; but these facts, nor any of them, nor all of them, will not necessarily control the court's construction. One is entitled to recover from another with whom he has made a contract, and which the other has violated, such damages as will put him in as good a position as he would have occu-

pied had the contract been performed; but he is not entitled to recover such damages as would make him a gainer by reason of the other party's violation of the contract. In *Brennan v. Clark*, 29 Neb., 385, MAXWELL, C. J., speaking of the construction to be placed by the courts on such contracts as the one here, said: "If the construction is doubtful, the agreement is considered as a penalty merely." This is doubtless a correct rule and we adhere to it; but there is nothing in the contract of Rollins, nor in the transactions out of which it grew, that causes us to doubt that the proper construction of this contract is the one placed thereon by the learned district court, and it accordingly follows that he did not err in refusing to instruct the jury as requested by the plaintiffs in error.

4. The fifth error is assigned in the following language: "The verdict is contrary to the first, second, third, fourth, fifth, and sixth instructions of the court as given." The first of these instructions was a statement of the issues on trial, and since the verdict of the jury can in no sense be said to be contrary to that instruction, and the assignment is that the verdict is contrary to all the instructions, the assignment must be overruled.

5. The sixth and seventh errors assigned here relate to a couple of questions propounded by the court to witnesses on the stand. It is said these questions were improper and immaterial. We do not think that they were either, nor that the district court committed any error whatever in asking them.

6. The first and second errors assigned are that the verdict is not supported by sufficient evidence, and is contrary to law. The testimony shows that Rollins did not complete the street car line by the 1st of May, 1889, as he contracted, but that it was completed some time about the 1st of June, 1889. The evidence as to the character of the street car service rendered was conflicting. The testimony of the plaintiffs in error tended to show that the cars were

39

run at very irregular intervals, and that the trips were not
half hour trips during the week, nor hour trips on Sun-
days, as the contract called for.   The testimony on behalf
of Rollins was a traverse of that of the plaintiffs in error as
to the character of the street car service.   The testimony on
behalf of the plaintiffs in error tended to show that about the
14th of May, 1891, Rollins abandoned the operation of the
street railway, while the testimony on his part tended to
show that the cars were taken off only temporarily and that
the road was in complete operation at the time of this suit.
The evidence tends to show that between the date of the
contract made with Rollins and the bringing of this suit
that the property of the plaintiffs in error had greatly de-
preciated in value, but whether this depreciation was
caused by the manner in which the street cars were oper-
ated was a question which went to the jury on conflict-
ing testimony.   In other words, the evidence on behalf of
the plaintiffs in error tended to support their theory of the
case, while the evidence on behalf of Rollins tended to sup-
port his theory.   The verdict of the jury must be taken to
mean that the jury awarded the plaintiffs in error nominal
damages for the failure of Rollins to complete his road by
May 1, 1889, and that the plaintiffs in error had sustained
no damages by reason of the failure of Rollins to operate
his road and render the character of street car service as
promised in his contract.   We cannot say that this verdict
is either not supported by sufficient evidence or contrary to
law.   The judgment of the district court is

AFFIRMED.