[No. 3717.]

GOUGAR, *et al.,* v. BUFFALO SPECIALTY COMPANY.

*On Re-Hearing.*

1. PLEADINGS—*Amendments—Liberality to be Exercised.* Courts should be very liberal in allowing amendments to answers. A new defense may be admitted as an amendment. (14)

Defendants had executed an agreement admitting the validity of certain patents for an invention, claimed by the assignor of plaintiff, and past infringements thereof, covenanting not to infringe the same in future, and in case of such future infringement, to pay $500 as liquidated damages for such past infringements. Action to recover the $500.00.

Defendant was permitted to put in a supplemental answer to the effect that the agreement was entered into on the faith of plaintiffs' representation that the patents were valid, etc., whereas defendant had since ascertained that they were without validity, and that plaintiff had no valid patent or monopoly. (13, 14)

2. *Motion to strike.* Waives all grounds not alleged. (14)

3. BILL OF EXCEPTIONS—*When Necessary.* The court of review may, in furtherance of justice, give relief against an error of the court below, even though no exception is reserved. (14)

4. APPEALS—*Errors Not Assigned,* may be considered and corrected when justice requires. (14)

5. PATENT FOR INVENTION—*Validity—Jurisdiction of the State Courts.* The courts of the state may try the validity of a patent for an invention. (13)

6. CONTRACTS—*Penalty or Liquidated Damages.* Whether a sum named in a contract is liquidated damages or a penalty depends, not merely upon the words used, but the nature of the contract, the situation of the parties, and the attending circumstances. (15)

In general, where the stipulation is to pay a sum in gross for the non-performance of an agreement, the sum will be regarded as a penalty. So where the strict enforcement of the contract will work oppression. So if a gross sum is to be paid in case of the breach of any one of several covenants of different degrees of importance. (15-19)

Defendants had been manufacturing and selling a compound for closing punctures in pneumatic tires. They executed a writing admitting the validity of certain patents held or claimed by the assignor of plaintiff, conferring the exclusive right, etc., admitting the infringement thereof in the past, and covenanting not to further infringe, etc., and in case of the violation of this covenant to pay, "as liquidated damages, not as a penalty," the sum of $500 for the past infringements. Action to recover the $500.00. There was no attempt on the part of the plaintiff to show what sales of the infringing substance had been made by defendants prior to the date of the contract, and the instrument referring to the damages occasioned by the infringement as only "considerable;" *held,* that the manifest purpose of the agreement was to coerce respect for the patents, and for this reason, and because, literally interpreted, the defendants would be liable in the full sum of $500 for an infringement, involving only nominal damages to the other party, the $500 must be regarded as a penalty.

7. EVIDENCE—*Opinions.* A witness testified that in his opinion the damage sustained by the owner of a particular patent, by reason of the infringement thereof were impossible of computation. *Held* mere conjecture and of no legal efficacy. (17)

*Appeal from Denver District Court.* HON. HUBERT L. SHATTUCK, Judge.

MR. R. D. THOMPSON for appellants.

MR. E. G. MANSFIELD, MR. WM. P. KAVANAGH and MR. JOHN HORNE CHILES for appellee.

*On Rehearing.*

BELL, J.

This action was brought in the Denver District Court on a written contract, which provides that The Buffalo Specialty Manufacturing Company, assignor of The Buffalo Specialty Company, appellee herein, "is now and for some years past has been the owner of letters patent of the United States of America No. 578551, issued on the 9th day of March, 1897, to Charles E. Duryea and his assignee The Indiana Rubber and Insulated Wire Company, of Marion, Indiana, which letters patent secure to said party of the first part (The Buffalo Specialty Manufacturing Company) the full, complete and exclusive right to *manufacture, use and sell all liquids, semi-liquids, powders or compounds for the purpose of automatically healing or closing punctures in pneumatic tires, and articles;* and

"Whereas, the said parties of the second part (appellants) are now and have been for some time past carrying on and conducting a certain bicycle and automobile business in the city of Denver, and have also been manufacturing and selling certain tire compounds or mixtures known as 'Elastic Tire Restorer' and 'Elastic Solution,' which articles come in competition with the article manufactured and sold by said first party *under said, and other patents for the same purposes,* thus causing to said first party *considerable damage,* and

"Whereas, said first party is about to commence suit against said second parties to restrain such infringement, and also to recover said damages, Now, THEREFORE, for and in consideration that said first party shall not bring said suit, and in the further consideration of one dollar ($1.00) to them in hand paid by said first party, the receipt of which is hereby acknowledged, said second parties individually and as co-partners do hereby covenant and agree to and with said first party as follows:

"1.    That the said letters patent and all other letters patent now owned by said first party or in which it has an interest, covering the manufacture, use or sale of any fluid, semi-fluid, powder, or compound, for automatically healing or closing. punctures in pneumatic tires, are good and valid patents, and that said second parties will not hereafter, directly or indirectly question either the validity of said patents, or the exclusive right of said first party to manufacture, use, and sell, any and all liquids, semi-liquids, powders, or compounds for such use.

"2.    That said second parties will on and after the date hereof cease the manufacture, use or sale of any and all fluids, semi-fluids, powders or compounds, or preparations whatsoever, to be used for automatically healing or closing punctures or vents in pneumatic tires or articles, and that they will not hereafter during the life of said patents or either of them, individually or as co-partners, make, use or sell, or offer for sale, or be interested directly or indirectly in the manufacture, use or sale of any fluid, semi-fluid, powder, compound or mixture for automatically healing or closing punctures or vents in pneumatic tires for vehicles.    Except, however, that said second parties have at all times the right to use any and all such articles for such purposes manufactured by the party of the first part.

"3.    That if said second parties or either of them shall in any way violate this agreement on their part at any time during the life of said patents, or either of them, that then and in that event they shall pay to the party of the first part as liquidated damages and not as a penalty the sum of five hundred dollars ($500), which amount may be recovered in an action at law hereon, and which amount, when so recovered will be in full for all damages sustained by said party on account of the said second party infringing said letters patent prior to the date hereof, but not for damages so suffered subsequent to said date.

"4. That in the event said second parties shall keep and perform on their part all and singular the conditions hereof the said first party does hereby waive all right and claim to damages heretofore suffered by reason of said second party's having infringed said patents." (Italics are mine.)

It is charged in the complaint that appellants neglected and refused to comply with the terms of the contract, and have not ceased the manufacture, use and sale of fluids, semi-fluids, powders, compounds, and preparations for automatically healing and closing punctures and vents in pneumatic tires and articles, and that they and each of them have made, used, sold and offered for sale, and have been interested, both directly and indirectly, in the manufacture, use and sale of fluids, semi-fluids, powders, compounds, and mixtures for automatically healing and closing punctures and vents in pneumatic tires and articles; and that, by reason of such breaches of said written contracts, said appellants owe the appellee the sum of $500, as liquidated damages.

Appellants answered denying the charges above stated, and on February 26th, 1910, the trial court granted leave to appellants to file a supplemental answer. The supplemental answer filed is designated as a "supplemental and additional answer," and alleges, in substance, that on or about July 28th, 1903, an agent of The Buffalo Specialty Manufacturing Company informed appellants that said company was then the owner of letters patent of the United States, No. 578,551, which gave said company the exclusive right to manufacture and sell any solution or substance for the healing or mending of pneumatic tires; that said agent declared and threatened that, if appellants did not cease using any and all solutions and compounds for healing of pneumatic tires, said company would prosecute them in the United States courts, would put them to great expense and litigation, and would destroy their business; that appellants relied upon the truthfulness of the claims made by said agent, and, fearing that the threat would be executed, they signed the contract as above set forth, but,

within a year thereafter, had learned that said company had no valid patent for, or monopoly on, the manufacture, sale or use of any solution or substance known as "Never-leak," or any other solution or substance whatever, for the healing of pneumatic tires; that the contract signed by them was wholly without consideration, and was entered into under the belief that said company (which subsequently assigned said contract to the appellee herein) had such a patent as would prevent appellants from manufacturing a certain solution that they had theretofore manufactured known as "The Elastic Tire Restorer."

On March 5th, 1910, appellee filed what it denominated "a motion to strike," but which, in substance, seems to have been a demurrer, charging that said supplemental and additional answer was irrelevant because:

"(1st)  Said supplemental answer presents issues which cannot be determined by this court.

"2nd   Said supplemental answer presents issues which constitute a new and independent defense from those presented by the issues in said defendants' original answers."

For the causes thus assigned, the trial court seems to have peremptorily stricken the supplemental answer from the files. We are utterly unable to see wherein such an answer would or could have raised such an issue as could not have been determined by the trial court; or wherein it could have been irrelevant by presenting an additional defense; and we find nothing in the record that justifies the striking of it from the files. It seems to have been the purpose of the appellants in filing it to be in a position to take advantage of the defense therein presented; and it is suggested in the argument of the appellee that it was properly stricken out because no sufficient showing was made that the facts therein alleged were not known when the original answer was filed. This suggestion might have some force if it had been contained in the motion to strike; but the point was not raised in the trial court, which, we think, erred in its ruling based

upon the objections made, both of which are untenable; and all others have been waived, not having been timely urged. Courts should be very liberal in allowing amendments to answers in the interest of justice, and such liberality may well be extended to the admission of new defenses. *Cartwright v. Ruffin,* 43 Colo. 377-379.

We are unable to find wherein an exception is preserved to the sustaining of this motion to strike, unless we should consider the motion as a demurrer, in which case an exception to the overruling thereof, unless waived, saves itself. But, even if no exception is preserved or no assignment of error or argument is made against the court's ruling in the matter, we may refuse to consider the same, but, in the interest of justice, are not prohibited therefrom.

Much evidence was offered and admitted at the trial which might support such a defense as was set forth in the supplemental answer, but whether it was sufficient for this purpose we should not and do not decide, as the case may be retried. But as the pleadings stand now, with the supplemental and additional answer eliminated, we should say that appellants have no *allegata* upon which to base any evidence in support of such a defense as is presented in said answer. This forcibly demonstrates the importance of the rule of pleading recognizing a great liberality in permitting defendants to amend their pleadings, even to the extent of setting up new defenses, as the same does not change the cause of action of the plaintiff, and for the additional reason that the defendant has not the privilege of suffering a non-suit, and of having a subsequent day in court as the plaintiff may have. Bliss on Code Pleading, 3rd Ed., Sec. 430; *Cartwright v. Ruffin, supra.*

It is, therefore, hereby directed that, in case of a retrial, the defendants be permitted to amend their pleadings in conformity with this opinion so that justice may be accomplished.

The trial court, in construing the contract, held that the provision thereof for the payment of the sum of $500 upon a breach of any of the conditions therein contained was one for the payment of liquidated damages and not for the payment of a penalty, and its ruling in this respect is assigned as error.

Whether a sum named in a contract is to be regarded as liquidated damages or as a penalty depends upon the intention of the parties as it appears from the nature of the contract, the situation of the parties and the attending circumstances, and not merely upon the language used: *Carson v. Arvantes,* 10 Colo. App. 382, 385-6; *Sanford v. First Nat. Bk.,* 94 Ia. 680; 19 Am. & Eng. Encyc. of Law, p. 396; 13 Cyc., 92-3; 2 Page on Contracts, Secs. 1172-3; and in case of doubt, whether a sum fixed by contract is a penalty or liquidated damages, the courts lean toward the former construction: *The Amanda G. M. Co. v. People's M. Co.,* 28 Colo. 251; *Monmouth Park Ass'n. v. Wallis Iron Works,* 55 N. J. Law, 132, 39 Am. St. Rep. 626; 3 Parsons on Contracts, 9th Ed., p. 171; 2 Page on Contracts, Sec. 1173.

In the case of *Radloff v. Haase,* 196 Ill 365, 368-9, the plaintiff bought of the defendant his bakery business for the sum of $1,400, and the defendant bound himself in the sum of $2,000, to be paid to the plaintiff, if he, the defendant, should engage in the same business within a radius of five blocks, for a period of five years. The principal question presented for consideration was whether the plaintiff had the right to recover the full amount of $2,000 as liquidated damages, or only the actual damages sustained. The Supreme Court, in passing upon the question, said:

"Whether the term 'liquidated damages' is used or not, the idea of the courts is to ascertain, if possible, the actual damages sustained, and if it is possible to ascertain the actual damages, or if the amount of liquidated damages mentioned in the contract is exorbitant, the court will construe the amount as a penalty, rather than as liquidated damages. It

is said in the *Scofield case, supra,* (95 Ill. 190) that the phrase 'liquidated damages' has often been made to read 'penalty' if the strict construction of the phraseology would work oppression upon the obligor; or, if the enforcement of the contract would be unconscionable, the courts will then construe the amount named in the contract as a penalty. And it seems from all cases that, whatever may be the wording of the contract, the courts will admit evidence as to whether or not the strict enforcement of its provisions would work a hardship upon the obligor. In the case at bar  *  *  *, if the contract could be construed as providing for liquidated damages, then, had appellee begun business but one day before the expiration of the stated terms, he would have been liable to appellant for the full $2,000."

Where parties agree upon the damages to be paid for a breach of contract, whatever name they give to it, they do substantially the same thing which is done by a bond with a penalty, and there is no more reason why the courts should regard the agreement, if it opposes reason and justice, in the one case than in the other. 3 Parsons on Contracts, 9th Ed., pp. 171-2.

In *Davis v. Gillett,* 52 N. H. 126, 129-30, it is said, in part quoting with approval from *Tayloe v. Sandiford,* 7 Wheat. 13:

"If the agreement assumes the form of a bond, with condition that it shall be void upon the performance or non-performance of an act, the *prima facie* presumption is, that the sum of money mentioned therein is intended merely as a security and not as liquidated damages; and this presumption will stand until controlled by very strong considerations.  *  *  *  . 'In general, a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages which the party, in whose favor the stipulation is made, may have sustained from the breach of contract by the opposite party. It will not, of course, be considered as liqui-

dated damages; and it will be incumbent on the party who claims them as such to, show that they were so considered by the contracting parties."

The instrument under consideration in the instant case, or that part of it providing for the payment of $500, is in the very nature of a penal bond, and seemingly intended to coerce performance on the part of the appellants of the conditions therein imposed, rather than to compensate the appellee for any damages that it would suffer by reason of the non-performance thereof; but it is contended that the designation in the instrument of the sum of $500 as liquidated damages overcomes the *prima facie* presumption that the amount named was intended as a penalty; and appellee attempted to support its contention by trying to prove that the nature of the business was such that a computation of the actual damages sustained was impossible. To this effect, one of its witnesses, who was also one of its attorneys, was asked:

"Do you know, Mr. Mansfield, approximately, as to what amount or how much damage The Buffalo Specialty Co. has sustained?

"No, sir, I have not. I think it would be impossible of computation, because of the nature of the business."

The first sentence of this answer discloses a complete lack of knowledge of the matter solicited; the second sentence thereof is a mere conclusion or voluntary opinion of the witness which serves no legal purpose in the case.

Appellee also called as a witness George L. Gougar, one of the appellants, who was examined under the statute and testified that every sale of Elastic Tire Restorer made by the appellants between the date of the contract and the commencement of the action appeared upon their books, and that he could show therefrom every such sale, "but not very quickly;" and that they never had any interest in the manufacture of Elastic Solution, but had sold a very limited quantity thereof in 1907 or 1908. There was no endeavor whatever by appellee to show any sales made prior to the date of

the contract, the damages for which the sum of $500 was intended to cover or secure, and the only reference made to the amount of damages sustained prior to the date of the contract, and which it alone purports to cover, is contained in the contract to the effect that, by reason of the manufacture, sale and use of Elastio Tire Restorer and Elastic Solution, which articles come in competition with articles manufactured and sold by appellee under its patent, the appellee has sustained "considerable damage." "Considerable" is defined by Webster in his first definition of the word as "worthy of consideration; requiring to be observed, borne in mind, or attended to," and, therefore, under the ordinary construction of pleadings, this vague term may well apply to any sum that rises above the dignity of a trifle, and certainly no defendant should be mulcted in the sum of $500 damages on any such uncertain allegation, wholly unsupported by proof.

Page on Contracts, Vol. II, Sec. 1167, defines a contract for a penalty and one for liquidated damages, as follows.

"A contract for a penalty is an agreement to pay a stipulated sum in case of default, intended to coerce performance, to punish default, or to secure payment of the actual damages. A contract for liquidated damages is a contract by which the parties *in advance of breach* fix the amount of damages which will result therefrom, and agreed upon its payment," (italics are mine) citing in support of each definition, respectively: *United States v. Cutajar,* 67 Fed. 530; *Gillilan v. Rollins,* 41 Neb. 540, 59 N. W. 893; and *Monmouth Park Ass'n v. Iron Works, supra,* 55 N. J. L. 132, 39 Am. St. Rep. 626, *sub nomine Wallis Iron Works v. Park Ass'n.,* 19 L. R. A. 456, 26 Atl. 140.

It will be borne in mind that the amount sought to be recovered consists of damages which accrued previous to the execution of the contract, and the parties could not have been trying to agree upon a sum certain as liquidated damages to cover the results of a future breach, the damages for which could not be foretold. If the appellants could definitely show

every sale and the approximate amounts used by them, as testified to by George Gougar, from the date of the contract to the time of the commencement of the suit, we may well infer that they could have shown the like sale and use for the indefinite time set forth in the complaint prior to the date of the sale. The appellee having failed to make any showing in this respect, we may well conclude that the contract was entered into by it, not for the purpose of securing compensation for the damages sustained, but to coerce performance of the conditions therein imposed. Where the agreement is made for the attainment of another object or purpose, to which the stipulated sum is wholly collateral, as would seem to have been done in this case, such sum will be treated as a penalty: 13 Cyc., p. 93.

Another test to which the courts frequently resort as an aid in distinguishing between a penalty and liquidated damages is stated, Page on Contracts, Vol. II, Sec. 1177, as follows:

"If provision is made for breach of several different covenants of a contract, and a gross sum is fixed which is to be paid in case of the breach of any one of such covenants, and the covenants are of different degrees of importance so that the damages resulting from the breach of one would be much greater than those resulting from the breach of another, the stipulation is held to be a penalty."

This principle is strongly supported in an extensive note to *Graham v. Bickham*, 1 Am. Dec. 328, citing many American and English authorities.

In *Floding v. Floding*, 73 S. E. (Ga.) 731, George A. Floding sold his business to W. E. Floding, and, in addition to the payment of the purchase price, W. E. Floding took a penal bond in the sum of $5,000, mentioned as liquidated damages, to be paid to him if George A. Floding violated the agreement. Among other provisions of the agreement, George A. Floding bound himself not to again engage in the manufacture or sale of regalia within five years from the date

of the agreement. The Supreme Court of Georgia held, as stated in paragraph 3 of the syllabus prepared by the court itself, that:

"Where a contract contains several stipulations, and the sum named in the contract as 'liquidated damages' for a breach of the agreement can apply to the breach of any stipulation of the contract, and it is apparent that the damages which could result from the breach of some of the stipulations would be so small in comparison with the sum named as liquidated damages as to make the latter excessive and unjust, the amount of damages stipulated will be held to be in the nature of a penalty, and not 'liquidated damages.'"

Under the contract before us, if enforced as it reads, the appellants would be liable to the full payment of the sum of $500 if they or either of them should manufacture, use, sell or offer for sale, any or all of the prohibited articles; or they would be liable to the same payment if they should strictly observe the conditions of the contract in this respect, and either question the validity of any of the alleged patents of the appellee, or successfully contest them. A breach of a number of the conditions could not involve an injury to the appellee in excess of nominal damages, while a breach of other conditions might occasion it very large actual damages.

The appellants introduced in evidence the patent claimed to have been infringed, seemingly for the purpose of showing that the compounds made by them did not fall within the terms thereof, and that the effects produced were substantially different, and there appears to be a great variance between the recitals in the contract and the descriptions of the compounds or processes set forth in the patent. In fact, in the application for the patent, the patentee showed no intention of patenting a compound, but simply a process of using any free-flowing liquid, semi-liquid, or powder for automatically healing tires, and asserted therein that:

"Among the liquids, gums or compounds which have been used with greater or less success, experimentally, by me

I will mention thin liquid glue or thick mucilage combined with sufficient glycerine to insure said glue or mucilage remaining fluid when exposed to the air contained within the tire."

He further stated that he had also successfully closed leaks or punctures by means of his invention by the use of flour within the air tube, the same being normally dry, but converted into a paste when needed by injecting into the air tube a small quantity of water, and that he did not confine himself to any specific liquid, compound or substance, "since the principle of my invention remains the same, irrespective of the particular substance found to be best suited to the stated requirements—namely, a liquid or semi-liquid which will retain its free-flowing characteristics while contained within the tire, but which will preferably harden or become more dense when exposed to the outer atmosphere."

The variance between the statements in the contract and application for and letters patent, and the evidence tending to show that the solutions used by the appellants were not used for the same purposes or in the same manner as those authorized under the patent, might have been very important had the appellants been able to retain intact their amended and additional answer. If said answer had not been stricken from the files, the contract sued on might have been proven to be void by reason of the alleged misrepresentations relied upon by the appellants when they executed and delivered said contract.

The contention of appellants so persistently pressed, that the contract is void as being in restraint of trade and broader than necessary for the reasonable protection of the rights of the patentee, is strongly supported by reason and authority; but the court has met with so many complications by reason of defective pleadings, incomplete records and omissions to preserve rights available to appellants at the trial, and the sweeping admissions in the contract, that the appellee owned the right to the exclusive use, manufacture and sale of prac-

tically all liquids, semi-liquids and compounds which may be used for automatically healing penumatic tires or articles, that it feels that the best course is to permit the case to be fully developed by the pleadings; and, because of the errors appearing in the record and the complications suggested, the judgment is reversed and the case remanded for further proceedings as herein indicated.

*Reversed and Remanded.*

CUNNINGHAM, Presiding Judge, specially concurring:

I can not concur in the view expressed in the majority opinion that the sum named in the agreement was a penalty rather than liquidated damages. I am not in sympathy with the tendency of the courts to relieve parties from their solemn contracts by judicial construction of the same. In the instant case the parties, in language as simple and plain as it was possible to employ, stated that the damages named in the contract should be regarded as liquidated damages, and, in order to make thoroughly positive their intention in this respect, they explicitly affirmed that the sum should *not* be taken or construed as a penalty. No attempt was made on the trial to show that the parties did not understand that the $500 should be treated as liquidated damages, and the situation presented by the facts surrounding the contract is one where the damages ought to be regarded as liquidated, first, because of the difficulty of proving them; second, because both parties contemplated the abandonment of a then contemplated law suit, one of the results of which could be foreseen, viz: the difficulty, if suit were started later, of assembling the evidence to prove the amount of damages provided for in the contract. My view is well expressed by the following language appearing in the 13th volume of Cyc., pages 90 to 94:

"As to whether a sum agreed to be paid as damages for the violation of an agreement shall be considered as liquidated damages or only as a penalty is held to depend upon the mean-

ing and intent of the parties as gathered from a full view of the provisions of the contract, the terms used to express the intent, and the peculiar circumstances of the subject-matter of the agreement. The contract is to govern; and the true question is, What was the contract? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence if the intention is clear. If there be no fraud, circumvention, or illegality in the case the court is bound to enforce the agreement. * * * Where the parties have agreed on the amount of damages, ascertained by fair calculation and adjustment, and have expressed this agreement in clear and explicit terms, the amount so fixed will be treated as the true damages and not as a penalty. * * * Where the parties by the terms of their agreement have expressly provided in terms whether the damages shall be liquidated or unliquidated, they will be so construed by the court."