BROWNING FERRIS INDUSTRIES OF NEBRASKA, INC., APPELLEE, v. THE EATING ESTABLISHMENT - 90TH & FORT, INC., DOING BUSINESS AS RUNZA, APPELLANT.

575 N.W. 2d 885

Filed March 10, 1998.   No. A-96-1331.

Carl J. Sjulin and Timothy L. Moll, of Rembolt Ludtke & Berger, for appellant.

Benjamin M. Belmont, of Lustgarten & Roberts, P.C., for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

This appeal addresses the question of the enforceability of a contractual provision for liquidated damages. The district court for Douglas County affirmed the Douglas County Court's ruling that The Eating Establishment — 90th & Fort, Inc., doing business as Runza (Eating Establishment), breached its contract with Browning Ferris Industries of Nebraska, Inc. (BFI), and was liable for liquidated damages in the amount of $1,074, plus costs.

## FACTUAL BACKGROUND

Although the trial, the district court appeal, and the briefs filed herein raise issues about the authority of the manager of Eating Establishment to bind it to the written contract with BFI, we do not summarize the evidence on that subject because it is not germane to our decision.

The evidence from the county court trial shows that Eating Establishment is a Runza franchisee affiliated with Runza National, Inc. (Runza), and owns and operates a Runza restaurant at 90th and Fort Streets in Omaha, Nebraska. Craig Dietz was the manager at the 90th and Fort location in 1990. BFI is a waste disposal service doing business in Omaha. Dawn Busenbark, a sales representative for BFI, testified that in

September 1990, Dietz contacted BFI regarding the collection of garbage at the 90th and Fort location. Dietz and Busenbark talked about the service BFI would provide, negotiated the price, and then negotiated the contract. This contract, signed on September 27, 1990, was a 1-year contract, automatically renewable for 1-year terms, unless a party gave 60 days' written notice of termination. The contract also contained a liquidated damages provision, which stated in part:

> In the event Customer terminates this Agreement prior to the expiration of its term, Customer agrees to pay BFI as liquidated damages an amount equal to the sum of Customer's monthly billings for the most recent six (6) months, or, if Customer has not been serviced for six (6) months, Customer's average monthly billings for the months serviced or if none, the billing projected by BFI for the first month, multiplied by six (6). Customer acknowledges that the foregoing liquidated damages are reasonable in light of the anticipated loss to BFI caused by the termination and are not imposed as a penalty.

Jeff Fishbaugh, a district sales manager for BFI, testified that in December 1994, BFI received notification from Runza that Runza wanted to terminate the agreement with BFI. Fishbaugh testified that a letter was sent to Runza's counsel to inform him that the agreement did not terminate until September 27, 1995, and that if Runza terminated the agreement, it would be in breach of the contract. Nonetheless, Runza chose to terminate the agreement, and BFI removed its container from the 90th and Fort location on January 8, 1995. Fishbaugh testified that Eating Establishment has paid for all the services that BFI actually provided and that the damages BFI sought in this action were for the termination of the agreement, not for payment of any services provided. Fishbaugh also testified that the reason for the liquidated damages portion in the contract was that "[t]he profits on each contract are difficult to ascertain. We have certain costs that are fixed and spread over a number of customers. Every time that number of customers changes, it affects the profits of the other adjacent customers." Fishbaugh testified that once the container was removed from the 90th and Fort location, it possibly was immediately sent to another location

but that that was uncertain because the containers were not tracked individually by serial number.

In an order dated December 26, 1995, the county court found "generally for the plaintiff and against the defendant in the amount of $1,074.00 plus costs." The county court did not make specific factual findings. Eating Establishment appealed this decision to the district court, and the district court found:

> There was sufficient evidence in the record to indicate that even if Craig Dietz did not in fact have authority to sign the agreement, the agreement was certainly ratified by the Defendant by allowing it to remain in force for four years and in paying all billings submitted by the Plaintiff to the Defendant for said service.
>
> In addition, the liquidated damage clause is clearly set out in the agreement, and based on the testimony in the Bill of Exceptions, the Court finds that it was a valid and legitimate liquidated damage clause and did not constitute a penalty.

## ASSIGNMENTS OF ERROR

Eating Establishment appeals to this court and argues that BFI offered no competent evidence that Dietz had the authority to sign the written agreement on behalf of Eating Establishment or that Eating Establishment ratified the agreement. Eating Establishment also argues that the liquidated damages provision in the written agreement constitutes an unenforceable penalty.

## STANDARD OF REVIEW

A suit for damages arising from breach of contract presents an action at law. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997). An appellate court reaches independent conclusions on questions of law. *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997).

## ANALYSIS

Although it is the final assignment of error, we will discuss the issue of the enforceability of the liquidated damages

provision because it is the dispositive issue. Eating Establishment argues that the liquidated damages portion of the contract constitutes an unenforceable penalty. Generally, the question of whether a sum mentioned in a contract is to be considered as liquidated damages or as a penalty is a question of law, dependent on the construction of the contract by the court. *Abel Constr. Co. v. School Dist. of Seward*, 188 Neb. 166, 195 N.W.2d 744 (1972).

■ In *Growney v. C M H Real Estate Co.*, 195 Neb. 398, 401, 238 N.W.2d 240, 242-43 (1976), the Supreme Court described liquidated damages as follows:

> "The question of whether a stipulated sum is for a penalty or for liquidated damages is answered by the application of one or more aspects of the following rule: a stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach."

The reasonableness of the stipulated damages can be judged as of the time the contract was formed. *Id.*

■ In *Yant Construction Co. v. Village of Campbell*, 123 Neb. 360, 243 N.W. 77 (1932), the Supreme Court held that the liquidated damages portion of a construction contract was an unenforceable penalty. The liquidated damages clause provided that the city could withhold $200 per month for each month's delay in completing the work. The court noted that "[t]here is no evidence in the record to show what damage, if any, the defendant sustained by reason of the mere delay in completing the work within the time specified." *Id.* at 365, 243 N.W. at 79. In determining that the liquidated damages provision in *Yant Construction Co.* was an improper penalty, the court quoted *Gillilan v. Rollins*, 41 Neb. 540, 59 N.W. 893 (1894):

> "When parties to a contract stipulate that in case of a violation thereof the party making default shall pay to the other a stipulated sum, the courts will take the sum so fixed as the innocent party's measure of damages only

when it appears that to do so will no more than compensate his losses.

"But in such case if the taking as the measure of damages the sum fixed in the contract to be paid for its breach will more than compensate the innocent party, the court will regard such sum as a penalty.

"It is not the policy of the law to punish a party for violating his contract, but to compel him to make good to others the losses they have sustained by his default."

123 Neb. at 366, 243 N.W. at 79. The court found that the liquidated damages provision was a penalty because the damages sustained by delay would not be difficult to ascertain, that the purpose of the liquidated damages clause was purportedly to "reimburse" the city for actual loss, and that the sum of $200 was in excess of reimbursement.

Initially, the record shows that Eating Establishment was able to establish on cross-examination that the actual damages would not be overly difficult to ascertain with some precision if BFI desired to do so. Fishbaugh testified that BFI was a sophisticated competitor in the disposal industry, with over 3,000 accounts in Nebraska, and had a full staff of accountants. Fishbaugh acknowledged that the company could probably determine what the profit was on an average contract.

Additionally, counsel for Eating Establishment elicited testimony from Fishbaugh indicating to us that the liquidated amount in the contract was not reasonable. For instance, Fishbaugh agreed with opposing counsel's statement that "there's no real relationship between the damages that you suffer based on the amount left [on the contract at the time of breach] and the amount you seek in this liquidated damages provision." This obviously is true because a breach with 1 month left generates the same damages as a breach with 11 months left. In each instance, it is the sum of the most recent 6 months' billings for garbage removal. Fishbaugh conceded that if the contract had continued between BFI and Eating Establishment, BFI would have incurred costs in servicing the contract. That BFI's contractual damage provision is a gross revenue amount when its actual damages would be the loss of net profit after payment of the costs associated with collection

of the garbage makes the liquidated damages provision immediately suspect. Thus, for obvious reasons, the damage provision is excessive because it provides more compensation for BFI than any losses it has suffered. Moreover, Fishbaugh admitted that the company did not know for sure if the container was immediately utilized on a new contract after leaving the 90th and Fort location. As a result, there was no proof that BFI had sustained damages in any amount. Finally, Fishbaugh acknowledged that it was possible the container subsequently generated revenue at a higher rate than it would have under the contract with Eating Establishment.

The straightforward nature of the collection business— place a container at a business, periodically empty it into a garbage truck, and haul it away in exchange for a fee—seems to readily lend itself to mitigation of damages by placing the container at another location. "[I]n Nebraska there exists a general duty to mitigate damages and . . . a party failing to mitigate damages is generally precluded from recovering those damages which could have been avoided had that party fulfilled its duty to mitigate." *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 889-90, 468 N.W.2d 350, 363 (1991). We suggest that if the circumstances of a contract and its breach lend themselves to mitigation of damages, it is difficult to sustain a liquidated damage clause.

However, we acknowledge that liquidated damages and mitigation of damages are antithetic doctrines. See *Lake Ridge Academy v. Carney*, 66 Ohio St. 3d 376, 613 N.E.2d 183 (1993) (holding as matter of law that when liquidated damage clause is valid, there is no duty to mitigate damages). But we do not believe a contracting party can negate the general duty to mitigate damages by merely inserting a liquidated damages provision in a contract. The Ohio Supreme Court in *Lake Ridge Academy* said that a valid liquidated damage clause contemplates the innocent party's inability to identify and mitigate its damages, relying on *Wassenaar v. Panos*, 111 Wis. 2d 518, 331 N.W.2d 357 (1983). The predicates for a valid liquidated damage contract are (1) that the actual damages be difficult to ascertain and (2) that the contractually specified damages are a reasonable estimate of the actual damages. *Growney v. C M H Real*

*Estate Co.*, 195 Neb. 398, 238 N.W.2d 240 (1976). When the predicates are not present, the normal rules of damages apply, including the duty to mitigate damages. It is apparent that BFI had no incentive to place the container in another location or even keep track of whether it did because the contractual damage provision gives BFI a far better deal: another 6 months' worth of billings, without any overhead costs, regardless of how much time was left on the contract. See *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1291 (7th Cir. 1985) (holding that liquidated damage clause designed to give plaintiff "full damages . . . and more" from breach even if it made no effort to find substitute use for equipment was "just one more piece of evidence that it is a penalty clause rather than a liquidated-damages clause"). This rationale is equally applicable here. BFI's failure to keep track of whether and when the container is again put to use after it is removed from a location precludes BFI from knowing whether it has actually been damaged. However, the evidence reveals this to be the "avoidance of knowledge," perhaps to shore up the claim for liquidated damages, rather than a situation where actual damages are truly difficult to ascertain. In the final analysis, BFI's failure to know this information precludes us from finding that the contractual provision is a reasonable estimate of BFI's actual damages. In fact, the evidence is compelling that the provision allows for recovery of more than BFI could ever suffer in damages.

In short, there are multiple reasons why we find that the liquidated damages provision in the written contract between BFI and Eating Establishment is a penalty rather than liquidated damages. As such, it is unenforceable.

## CONCLUSION

BFI sought only liquidated damages. Having found that the liquidated damages provision is unenforceable as a penalty and because there was no evidence of actual damages, we need not address whether Dietz had authority to bind Eating Establishment to the contract. The judgment is reversed, and the cause is remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.