St. Paul & Duluth Railroad Company *vs.* Paul Blackmar, Trustee, impleaded, etc.

November 22, 1890.

Contract—Construction by Acts of Parties.—It is only where there is doubt as to the meaning of the terms in a written contract, or the writing is silent or incomplete as to a given point, that the court in interpreting the contract will resort to a practical construction which the parties may have put upon it.

Estoppel.—Certain allegations *held* not to make a case of estoppel.

Application to Vacate Judgment—Conditions as to Form of Answer. Upon an application to set aside a judgment, and for leave to answer, the court, even though satisfied with the excuse for the default, need not be content with a formal compliance in the answer with the rules of

pleading which a party may follow when answering as matter of right, but may require that in its denials it show the actual extent of the controversy upon the matters denied, as where the denials are of amounts stated in the complaint, and the exact amounts stated are not material.

Appeal by defendant Blackmar, trustee under the instrument considered in the opinion, from an order of the district court for Carlton county, *Stearns*, J., presiding, denying his motion to set aside a judgment by default, and for leave to serve a proposed answer.

*J. M. Shaw* and *W. E. Hale*, for appellant.

*W. H. Bliss* and *Jackson & Atwater*, for respondent.

GILFILLAN, C. J. The defendant Blackmar appeals to this court from an order of the district court, denying his motion to set aside a judgment taken by plaintiff against him by default, and for leave to answer. A consideration of the answer and of the complaint is necessary. It appears from the complaint that, March 27, 1883, the plaintiff executed to one Bliss a contract to convey some 20,000 acres of land, the value of which consisted mainly in the timber standing upon it. The money consideration for the agreement to convey was stated at $153,147.63, payable at different dates, according to 20 promissory notes of said Bliss; but the contract stated, as a further consideration, that Bliss was to build and keep in operation a saw-mill capable of sawing not less than 10,000,000 feet board measure per year, and to manufacture at it all pine lumber upon the land, and to transport all the manufactured products of the timber over the plaintiff's road to an amount equal to the amount of the estimates, being 65,645,000 feet, at certain rates for transportation. Upon the payment of all said notes, the last of which was to become due May 1, 1892, and the full performance of all the agreements and stipulations of the contract, the plaintiff was to convey the land to Bliss; but in case of failure to pay any note for 60 days after it should become due, time being expressly declared to be of the essence of the contract, or failure to perform the other stipulations on the part of Bliss, the contract was, at the election of the plaintiff, to become null and void, without any right on his part to any reclamation or compensation for money paid or improvements made or services rendered. There were a great many other stipulations in the con-

tract which it is unnecessary to mention here. There was a schedule attached to the contract, containing descriptions of the lands, and opposite each subdivision a statement of the amount of timber estimated to be upon it, the aggregate being 65,645,000 feet. No effect is given in the contract to these estimates, and they are not referred to in it, except for the purpose of specifying the amount that Bliss was to manufacture and transport over plaintiff's road. May 31, 1884, Bliss, with the consent of the plaintiff, assigned an undivided half-interest in said contract to one Elliot, the latter agreeing to be personally liable for the payment of the consideration. In August, 1884, Bliss and Elliot became insolvent, and made an assignment of all their property, including said contract, for the benefit of their creditors. At that time they were largely in default in respect to the payments to be made under the contract. November 24, 1884, pursuant to an order of the district court in which the assignment was filed, the assignee, the assignors, all their creditors, this plaintiff, and defendant Blackmar, executed a deed, whereby the assignee conveyed and assigned to said defendant all the property assigned by Bliss and Elliot, including said contract to convey, in trust to operate the mill mentioned in said contract; to sell all lumber, lath, and shingles then manufactured at the mill, and out of the proceeds pay all valid labor liens thereon, and pay to plaintiff a sum equal to the stumpage of $2.33 per 1,000 feet on all the logs theretofore cut under said contract, and divide the residue of the proceeds, after paying necessary expenses, among the creditors other than plaintiff; to manufacture at said mill all the logs then on hand, and those cut which could be advantageously driven that fall, and out of the proceeds reimburse the plaintiff for such sums as it may have paid in driving the logs; to continue to carry on the business of cutting and driving logs, and manufacturing and selling lumber therefrom, under the provisions of said contract, "except that he shall pay unto said railroad company, out of the first proceeds of all sales of lumber, a sum equal to a stumpage of $2.33 per thousand feet upon all logs from which such lumber shall have been manufactured, in lieu of the payments provided for in said contract," and, after paying necessary expenses, and reserving a reasonable amount for current and future expenses, dis-

tribute the remainder of the proceeds *pro rata* among the creditors other than plaintiff. There were many other provisions in the deed, which need not be specially referred to, as they do not affect the matters complained of. The deed refers to a written proposition made by plaintiff to John De Laittre, and makes it a part of the deed, except so far as the same is modified by the terms of the deed. This proposition states substantially the terms inserted in the deed, so far as affected the rights of the plaintiff, and contains these statements, not made clear by the terms of the deed itself: That the trustee shall operate the mill "under the terms and provisions of the contract between the St. Paul & Duluth Railroad Company, and said Bliss and Elliot, save and except as the same is modified by this agreement," and "the several sums so to be paid to the railroad company" (for stumpage, etc.) "shall, from time to time, be credited and applied upon the promissory notes given by Bliss and Elliot to the railroad company under said contract," and that, when the sales shall be sufficient to satisfy all claims of creditors, or they shall be otherwise satisfied, "the said mill and property not then disposed of shall be delivered to said Bliss and Elliot, to be by them held subject to the terms and provisions of said original contract with said railroad company." It is manifest that it was the intention to keep in force all the terms and conditions of the contract to convey, except as to the times and mode of making payments, which, instead of being made at the times and in the amounts specified in that contract, were to be made as sales of lumber were made, at a rate equal to the specified stumpage.

Blackmar immediately entered upon the business of the trust, and, as the complaint alleges, has cut more than 60,000,000 feet of logs and manufactured the greater part of it and sold nearly all the lumber, and has failed to pay said sum of $2.33 per thousand feet upon the timber cut, and has paid plaintiff only the sum of $82,633.95, and is now in default in regard to the payments provided for in said trust-deed in the sum of more than $75,000, and that there is now unpaid of the consideration price in said contract to convey the sum of $132,037.72, with interest from February 1, 1890. There are other charges of defaults and misconduct on the part of said defend-

ant as trustee, but we need specify only such as give plaintiff a right to relief against the defendant. The complaint asks for an accounting of the amount due plaintiff for stumpage; that it have judgment against defendant Blackmar for the amount found due it; that the contract to convey be declared forfeited; and for other relief.

The answer which defendant asked leave to serve contained a denial in general terms of the allegations in the complaint above specified as to the amounts of logs cut and manufactured, of lumber sold, of the amount paid plaintiff, of the amount of stumpage remaining unpaid, and of the amount unpaid of the purchase price in the contract to convey, and denials of other matters which we do not deem material. The answer then sets forth at great length, but in a very confused way, new matter, in substance : *First,* that under the trust-deed the amount upon which the trustee was to pay a sum equal to a stumpage of $2.33 per 1,000 feet upon all logs from which such lumber shall have been manufactured, was to be ascertained, not by any actual measurement, but by the estimates as set out in the schedule attached to the contract to convey, the effect of which would be that if the estimate as to a particular subdivision was 1,000,000 feet, and the actual cut from it 2,000,000, the stumpage of $2.33 per 1,000 was to be paid on the one and not on the two millions. There is nothing in the trust-deed to suggest any such mode of determining the amount of stumpage to be paid for, nor that it was to be paid upon any other than the amount actually cut, manufactured, and sold. There is in the deed no doubt or ambiguity as to that. And that disposes of the affirmative matter *secondly* set forth in the answer, which was for the purpose of showing that the parties, plaintiff and trustee defendant, in transacting the business so far as it had been transacted, adopted and acted upon the estimates as showing upon how many feet stumpage was to be paid; for, where the terms of a written contract are clear and unambiguous, its meaning is to be taken as expressed in the writing. It is only where there is doubt as to the meaning of the terms used, or the writing is silent or incomplete as to a given point, that the courts in interpreting the contract will resort to a practical construction which the parties may have put upon it.

The defendant also claims for some of the facts affirmatively pleaded the effect of estopping plaintiff from now claiming the right to charge stumpage upon any other basis than such estimates. The allegations referred to in defendant's brief, as making a case of estoppel, are, in effect, as stated in the brief, that because of a claim of plaintiff that the charge for stumpage should be according to the estimates, and not the actual cut, and that, whenever an entry for the purpose of cutting was made on a particular subdivision, it had a right to charge upon the estimate for that subdivision, whether all the timber standing on it was actually cut or not, the defendant settled and paid for the stumpage on the logs cut by Bliss and Elliot according to the estimates, and thus paid for a large quantity of timber not cut, but standing upon lands Bliss and Elliot had entered and partly cut, which, according to plaintiff's present interpretation of the deed, he would not have been required to pay for until after it was cut and manufactured; and also that, by reason of plaintiff's claim to charge according to the estimates, defendant waived his statutory right to have the logs surveyed by the surveyor general of logs. The statement in the brief of what the answer alleges is not borne out by the answer. From that it does not appear, nor is there any intimation, that, in paying for the logs previously cut by Bliss and Elliot, he paid a cent more than he was required to pay at that time for those logs by the trust-deed. The answer states the aggregate of the estimates upon the subdivisions which Bliss and Elliot entered upon and cut over in whole or in part, but is entirely silent as to how much was actually cut by them. For aught that appears, the actual cut was double the amount of the estimates upon which defendant paid. No estoppel *in pais* can arise, unless to permit the party sought to be estopped to show the truth will operate as a fraud on the other party. The claim that defendant waived his right to have the logs scaled by the surveyor general is equally devoid of foundation in the answer. Either party might, had he chosen, have had the logs measured by the surveyor general, or he might have measured them himself. It does not appear from the answer that defendant ever thought of doing either, or ever waived or gave up his right to do either. There was no case of estoppel.

There are in the answer other new matters, but those we have referred to—that is, those touching the actual meaning of the contract as to whether payments were to be made according to the estimates or the actual cut and manufacture, those claimed to show a practical construction of the contract, and those claimed to show an estoppel —are the only allegations of new matter which are here claimed to constitute any defence. The order refusing leave to file the answer contains this clause: "This order refusing said application of the defendant to file and serve said answer is based entirely upon the ground that said answer sets forth no defence to the complaint herein, so far as it attempts to set forth a defence affirmatively, and that the denials therein do not put in issue matters in the complaint sufficient to warrant the court in granting the application, and in allowing the answer to be filed." It seems from this that the application was refused, not because the denials in the answer did not make technical issues upon the matters denied, but because the court thought that, when applying to the discretion of the court, the defendant in such a case ought to do more than make merely formal issues; ought to make the denials in such a way as to show substantial and material issues. The complaint alleges that only $83,633.95 was paid; that defendant is in default more than $75,000; and that there remains unpaid of the contract price $132,037.72, with interest from February 1, 1890. If there had been $85,000 paid, the default been only $74,000, and the amount of the contract price unpaid been only $132,000, technical issues might be made by a simple denial of the allegations in the complaint; but the real differences in fact might not be so material as to be a defence to the demand that the contract be declared forfeited, and, so far as material to the amount of money to be recovered by plaintiff, the judgment does not dispose of that, but directs an account to be taken. The answer does not allege how much defendant had paid, how much, if anything, he was in default, and how much of the contract price remained unpaid. Had it done so it would have disclosed that the real difference between the parties was or was not material to the matters determined by the judgment. When its discretion is applied to in such a case, the court may, even if satisfied with the excuse for the default, require the answer to dis-

close the actual extent of the controversy between the parties, and need not be content with a formal compliance with the rules of pleading which a party may follow when answering as a matter of right. The answer alleges how much timber had been cut *"according to the estimates,"* but not how much had been actually cut. It is evident from the answer that the denial of the allegation in the complaint of the amount cut, manufactured, and sold, is based, not on the amount actually cut, but on the estimates, and is really but a denial that, according to the estimates, the amount was so great as charged in the complaint. That there may have been other reasons apparent for the court to require more definite and specific denials is evident from the fact stated in appellant's brief that his account of the amount cut was on file when the motion for leave to answer was heard, and it was heard not only on the pleadings and affidavits, but on the records and files in the action. With the account before it, the court might well hold that the general denials in the answer were not satisfactory.

Order affirmed.