PEOPLES SAVINGS BANK & TRUST COMPANY, A CORPORATION,
*Plaintiff in Error*, v. G. F. LANDSTREET, *Defendant in
Error.*

## Opinion Filed December 17, 1920.

1. Where the terms of a written contract are in any respect
uncertain or doubtful and the parties thereto have by their
conduct placed a construction upon the contract which is
reasonable, such construction will be adopted by the court
upon the principle that it is the duty of the court to give ef-
fect to the intention of the parties where it is not wholly
at variance with the correct legal interpretation of the terms
of the contract.

2. The rule which gives effect to the intention of the parties
to the contract may be invoked only in cases where there is
doubt as to the meaning of the terms employed to express
the contract. If the meaning is clear and free from am-
biguity the contract will not be changed by an erroneous
construction placed upon it by the parties thereto, and an
erroneous construction by them will not prevent the court
from giving the true construction to the contract, the pro-
vince of the court being to give effect to the contract which
the parties have made.

3. If the language employed in a contract is free from am-
biguity effect will be given to such language, although it may
result in placing a construction upon the contract under con-
sideration different in its effect from the practical construc-
tion which may have been placed upon it by the parties
themselves.

4. "In considering a contract of guaranty a liberal construc-
tion should be indulged to determine the intent of the par-
ties, and when that intent is discovered the guarantor is en-
titled to a strict construction in the working out of the in-
tent."

5. Defendant agreed with a third party to pay drafts drawn on him through a designated bank and gave to him the following letter evidencing such agreement: "You may inform the Peoples Savings Bank of your city that I will honor your drafts drawn on me, amount not to exceed five hundred dollars, if this will be of service to you." *Held*, that the obligation assumed by defendant was limited to the amount stated in the letter and that the language employed did not create a continuing guarantee by defendant to pay drafts not exceeding this amount from time to time for an indefinite period.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Affirmed.

*Atkinson & Burdine*, for Plaintiff in Error;

*Shutts & Bowen*, for Defendant in Error.

WEST, J.—Suit was brought by plaintiff in error to recover the sum of two drafts drawn in its favor upon defendant in error, payment of which was refused. An amended declaration was demurred to and the demurrer was sustained. Plaintiff in error declined to amend its declaration, whereupon judgment was entered by the court upon the demurrer in favor of defendant in error.

The several counts of the declaration are predicated upon the same transaction. The first count is typical and states the case of plaintiff in error. We insert it here, omitting formal parts:

"First. That heretofore, to-wit: on or about the fifth day of June, 1917, in consideration that the said plaintiff at the special intsance and request of said defendant

would advance and pay to one Albert C. Landstreet certain sums of money on certain drafts drawn by said Albert C. Landstreet on said G. F. Landstreet, the defendant promised that, the said defendant, would in such event pay and honor all of such drafts of said Albert C. Landstreet drawn on him, as presented, if no such draft amounted to more than Five Hundred Dollars, the said promise of the said defendant being in words and figures as follows:

" 'Miami, Florida, June 5-17.
" 'Mr. Albert C. Landstreet,
" 'Memphis, Tenn.
" 'Dear Sir:
" 'You may inform the Peoples Savings Bank of your city that I will honor your drafts drawn on me, amount not to exceed five hundred dollars, if this will be of service to you.
" 'Yours,
" 'G. F. LANDSTREET.'

"And plaintiff says that thereafter divers and sundry drafts of various amounts were drawn by the said Albert C. Landstreet on the said G. F. Landstreet for divers sums of money aggregating far more than Five Hundred Dollars, and that from time to time said sums were advanced by said plaintiff to the said Albert C. Landstreet, all of which were paid until, to-wit: the 31st of October, 1917, when the said Albert C. Landstreet drew a certain draft on the said G. F. Landstreet for the sum of Three Hundred Seventy-five Dollars and did present the same to this plaintiff, and the said plaintiff thereupon, relying on the said promises and undertakings of the defendant set out in the above writing, and confiding in the promises and agreements made by the said defendant,

and being induced solely thereby, did pay over and deliver to said Albert C. Landstreet Three Hundred Seventy-five Dollars, lawful money of the United States of America and of the value of Three Hundrey Seventy-five Dollars, and thereupon the said draft was duly and properly presented to the said G. F. Landstreet, but he, the said G. F. Landstreet, refused to honor said draft and refused to pay the same and the amount now remains unpaid.

"Hence this suit and plaintiff claims One Thousand Dollars."

One question only is presented for consideration. Counsel for plaintiff in error say in their brief that the pleadings have been so framed as to present the question of whether or not the paper writing referred to in the declaration is a continuing guaranty and whether the defendant in error by accepting drafts from time to time in excess of the amount stated in this paper writing without objection has estopped himself from denying his liability, and counsel for defendant in error agree that the question presented is whether the instument sued on is a continuing guaranty.

The contention is made that since, according to the allegations of the declaration, the drawee of the drafts himself construed the paper writing which is the basis of his alleged liability as a continuing warranty, as evidenced by his paying from time to time various drafts in excess of the amount stated, he should not now be permitted to take a contrary position, and in support of this contention the doctrine seems to be invoked that where the terms of a written agreement are in any respects uncertain or doubtful and the parties thereto have by their conduct placed a construction upon it

which is reasonable, such construction will be adopted by the court to give effect to the intention of the parties. Holmes et al v. Stearns Lumber & Export Co., 66 Fla. 259, 63 South. Rep. 449; Mizell Live Stock Co. v. J. J. McCaskill Co., 59 Fla. 322, 51 South. Rep. 547; Scotch Mnfg. Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427; Shouse, Admr., v. Doane, 39 Fla. 95, 21 South Rep. 807.

This rule, however, is applicable only in cases where there is doubt as to the meaning of the terms employed to express the agreement. If the meaning is clear and free from ambiguity, the contract will not be changed by an erroneous construction placed upon it by the parties thereto, and an erroneous construction by them will not prevent the court from giving the true construction. The province of the court is to give effect to the contract which the parties have made. 9 Cyc. 590; A. & St. A. Ry. Co. v. Thomas et al., 60 Fla. 412, 53 South. Rep. 510; St. Paul & D. R. Co. v. Blackmar, 44 Minn. 514, 47 N. W. Rep. 172; Holston Salt & Plaster Co. v. Campbell et al., 89 Va. 396, 16 S. E. Rep. 274; Sternberg et al. v. Brock et al., 225 Pa. 279, 74 Atl. Rep. 166. So that if the language employed in the agreement is free from ambiguity effect will be given to such language, although it may result in placing a construction upon the instrument under consideration different in its effect from the practical construction which may have been placed upon it by the parties themselves.

If there is room for construction the rule here is "that a liberal construction should be indulged to determine the intent of the parties, and that when that intent is discovered the guarantor is entitled to a strict construction in the working out of the intent." Punta Gorda

Bank v. State Bank of Ft. Meade, 52 Fla. 399, 42 South. Rep. 846.

Several rules seem to have been formulated in other jurisdictions for testing the question of whether instruments similar in their purpose to the one under consideration constitute continuing obligations. These rules are stated and varous authorities on the point assembled in a note to the New Jersey case of Newcomb v. Kleeben, reported in 39 L. R. A. (N. S.) 724.

If we assume that this court is committed by the case of Hawkins v. Mitchell, 34 Fla. 405, 16 South. Rep. 311, to the rule that the words of a guaranty are to be taken as strongly against the guarantor as the sense will admit, it would not affect the holding in this case, for the reason that the words of the instrument under consideration seem to us to be sufficiently clear and free from doubt in their meaning as to result in the conclusion that it was the purpose of the obligor to limit his liability under this obligation to the amount stated and that it was not his intent to create a continuing guaranty of this amount to run for an indefinite period of time. The court below, therefore, rightly held that the declaration did not state a cause of action and properly sustained the demurrer thereto.

The judgment will be affirmed.

WHITFIELD AND ELLIS, J. J., concur.

BROWNE, C. J., AND TAYLOR, J., dissent.

BROWNE, C. J., dissenting.

The opinion recognizes the doctrine that "where the terms of a written agreement are in any respect uncertain

or doubtful and the parties thereto have by their conduct placed a construction upon it which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties."

The opinion, however, avoids the conclusion that this doctrine leads to in the instance case, by stating that "this rule, however, is applicable only in cases where there is doubt as to the meaning of the terms employed to express the agreement if the meaning is clear and free from ambiguity."

Again the opinion says: "If we assume that this court is committed by the case of Hawkins v. Mitchell, 34 Fla. 405, 16 South. Rep. 311, to the rule that the words of a guaranty are to be taken as strongly against the guarantor as the sense will admit, it would not affect the holding in this case for the reason that the words of the instrument under consideration seem to us to be sufficiently clear and free from doubt in their meaning as to result in the conclusion that it was the purpose of the obligor to limit his liability under this obligation to the amount stated and that it was not his intent to create a continuing guaranty of this amount to run for an indefinite period of time."

The decision reached in this case is, therefore, predicated solely upon the finding that the words of the instrument under consideration are clear and free from doubt in their meaning.

Albert C. Landstreet was engaged in the automobile business in Memphis, Tennessee, where the plaintiff's bank was located; he did his banking business with plaintiff's bank, and, from time to time, drew drafts on G. F. Landstreet in Miami, Florida, which the bank would cash and

place the proceeds to the credit of his account. Finally the bank notified him that it would not accept for deposit, or advance any further sum or drafts drawn, on G. F. Landstreet unless G. F. Landstreet would bind himself in writing to honor Albert C. Landstreet's drafts. Thereupon G. F. Landstreet wrote the letter which was delivered to the bank, that is the basis of this suit.

What was the purpose of this letter? Was it not to continue the course of dealing that Albert C. Landstreet had been having with the bank up to the time the bank required some guarantee from G. F. Landstreet that he would pay Albert C. Landstreet's drafts?

There is a very full discussion of guaranties in Crist v. Burlingame, 62 Barb. 351, where the leading authorities are cited, and there is no need for me to pad this opinion with them. I will indulge only in one citation from Mr. Justice STORY:

" 'If the language be ambiguous, and admits of two fair interpretations, and the guarantee has advanced his money on the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor, for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words by which the other party is misled to his injury.' "

The Standard Dictionary defines ambiguity as "the quality of being ambiguous, obscure, or uncertain in meaning, especially *where either of two interpretations is possible*." Ambiguous is defined as "capable of being understood in more senses than one."

The letter guaranteeing payment of the drafts is in these words:

." 'Miami, Florida, June 5-17.
" 'Mr. Albert C. Landstreet,
" 'Memphis, Tenn.
" 'Dear Sir:

" 'You may inform the Peoples Savings Bank of your City that I will honor your drafts drawn on me, amount not to exceed five hundred dollars, if this will be of service to you.

" 'Yours
" 'G. F. Landstreet.' "

I think it possible to place either of two interpretations upon this guaranty:

(1) That the guarantor would pay all "drafts" provided none exceeded five hundred dollars;

(2) That he would pay all drafts, until such time as they aggregated $500.00.

The first interpretation was placed upon the letter by Albert C. Landstreet, who drew drafts, the aggregate amount of which far exceeded $500.00. The bank officials who cashed the drafts placed the same interpretation upon it, and cashed drafts aggregating far more than $500.00.

Banks do not give up their funds lightly or easily. No other class of persons probably have as much experience in interpreting written instruments of this character as bankers. It is hardly conceivable that a bank would part with sums of money aggregating far more than the amount it was authorized to pay, if the written instrument clearly and unambiguously limited the drawer to a lesser amount.

The writer of this dissent places the same interpretation on the guaranty as was placed on it by Albert C Landstreet and the bank officials.

An emphatic difference of opinion between persons supposedly equally capable of construing written documents, and with equal knowledge of good English, as to what written words mean, would seem to establish an ambiguity.

An ambiguity is not removed by dogmatic assertions that an instrument is clear and unambiguous, for the judicial mind often sees two sides to a question where but one can be seen by the advocate.

I do not contend that the letter under consideration is capable only of the interpretation that I place upon it, but yield to my brothers that it is capable of their interpretation also. They, however, will not concede that it is capable of the interpretation that I place upon it, or that "either of two interpretations is possible."

If, as I contend, the letter is ambiguous, we may look to the interpretation placed on it by all the parties to the transaction.

Albert C. Landstreet, to whom the letter was addressed, construed it as a continuing guaranty and drew drafts on his brother for amounts aggregating far more than $500.00; the bank constued it as a continuing guaranty and paid drafts drawn by Albert C. Landstreet on his brother for sums aggregating far more than $500.00, and G. F. Landstreet, the guarantor, paid "divers and sundry drafts of various amounts" "for divers sums of money aggregating far more than five hundred dollars," through a period extending from June 5th to October 31st, 1917.

In paying the drafts through so long a period, and after the aggregate amount far exceeded five hundred dollars, he clearly indicated to the bank that the limitation as to the "amount" related to any draft and not the aggre-

gate amount of all drafts. Thus he placed his own construction on the language he used in his guaranty, and it is the same interpretation that all the parties concerned placed upon it.

The fact that he paid drafts running through a period of nearly five months demonstrates that he intended it to be a continuing guaranty.

I am forced to the conclusion that the only limitation to his guaranty was that *no one* draft should exceed five hundred dollars.

With this construction placed on the guaranty, it is my judgment that the declaration stated a cause of action, and the demurrer should have been overruled, and the judgment reversed.

TAYLOR J., concurs.