CASSIE ETHEL ARNOLD, individually and CASSIE ETHEL ARNOLD, as Administratrix of the Estate of Campbell Elmore Arnold, deceased, *Appellant,* vs. FIRST SAVINGS & TRUST COMPANY OF TAMPA, a Corporation, as Trustee; WILLIAM L. VANDYKE and his wife, MARIE ELIOT VANDYKE: FRED R. HENSLEY: TIBBETTS CORNER, INC., a corporation, et als., *Appellees.*

140 So. 660.

Division A.

Opinion filed March 25, 1932.

Petition for rehearing denied May 17, 1932.

*Dickenson & Lake,* for Appellant;
*E. B. Drumright,* for Appellees.

BUFORD, C.J.—On July 1st, 1921, Campbell Elmore

Arnold entered into a contract by which was leased for a term of 99 years certain property in Tampa, Florida, known as Tibbetts Corner to W. L. VanDyke and Marie Eliot VanDyke, it being understood and agreed that the VanDykes could organize a corporation within a stated period of time which corporation would succeed to the rights of the VanDykes and at the same time the Arnolds sold to the VanDykes and the corporation to be incorporated the retail business theretofore owned and operated by the Arnolds located in the store on the property leased. The corporation was created under the name of Tibbetts Corner, Inc., and went into possession of the leased property and took possession of and conducted the retail mercantile business located therein.

It was known to all parties to the lease and to the purchase and sale of the stock of goods, good-will etc., of the retail business, that there was grave doubt as to whether Campbell Elmore Arnold owned a fee simple estate or a life estate in the property leased and, with this knowledge in view, the lessees desired to be assured that they would have the use of the property for at least fifteen (15) years for the purpose of conducting the retail business established therein during that period of time and, to accomplish this, there were inserted in the lease the following provisions:

"It is further agreed and understood by and between the parties hereto that the said Lessor, Campbell Elmore Arnold, acquired title to the above described leased premises under and by virtue of the last will and testament of Samintha Campbell, deceased, late of Hillsborough County, Florida, as said will was admitted to probate in the County Judge's Court of Hillsborough County, Florida, on the 28th day of June One Thousand Nine Hundred and Nineteen, and recorded in the office of the County Judge of Hillsborough County, Florida, in Book of Local Wills F, on page 450, and that the said lessee has full knowledge of the provisions of said

will, and particularly has the lessee knowledge of that clause of said will which reads and is as follows:

'I give, bequeath and devise to my grandson Campbell Elmore Arnold that part of Lot one (1) of Block Seventy-seven (77) according to the General Map of the Town of Tampa made by John Jackson surveyor in 1853, said part of Lot One (1) of Block Seventy-seven (77) being Forty-two (42) feet on Franklin Street and Seventy (70) feet on Lafayette Street, and said Lot One (1) of Block Seventy-seven (77) being situated in the City of Tampa, County of Hillsborough and State of Florida, to have and to hold the same with the profits, rents and income for his use and benefit for and during his natural life and at his death to the heirs of his body and their heirs and assigns forever, if he should die without heirs of his body then to my heirs forever.'

And whereas it has been questioned by persons other than the parties to this lease whether the said Campbell Elmore Arnold has merely a life estate in said above described leased premises or is the owner in fee simple of the title of said leased premises:

Now, therefore, the said Lessors do further promise and agree that the said Lessor, Campbell Elmore Arnold, will at his expense and within a reasonable time from the date hereof, institute a suit in Chancery in a Court of competent jurisdiction in this State, with the necessary parties defendant thereto, for the purpose of determining the true construction of the provisions of said will of the said Samintha Campbell wherein the above described real estate is devised to the said Lessor Campbell Elmore Arnold, and for the determination of the question of whether the said Campbell Elmore Arnold holds a life estate or a fee simple estate in and to the said leased premises. And said Lessors do further promise and agree, with all reasonable dispatch, to prosecute said suit to a final decree and in the event a final decree should be entered by the Court in which said suit is instituted in substance and to the effect that the said Campbell Elmore Arnold holds merely a life estate in the said leased premises or any estate in said

leased premises less than the whole and entire fee simple title to said leased premises, that said Lessor shall promptly take or cause to be taken an appeal in said cause to the Supreme Court of the State of Florida and to prosecute said appeal with all reasonable diligence and dispatch to a final conclusion. And the said Lessors do further promise and agree that six life insurance policies on the life of him, the said Campbell Elmore Arnold, in the Equitable Life Assurance Society of the United States for the sum of Five Thousand Dollars each, or in some other life insurance company to be approved by the Lessee, shall be in the manner and form prescribed by law assigned to the First Savings & Trust Company of Tampa, Florida, as Trustee, upon the trust and under agreement by and between the parties hereto that in the event the said Lessee should be dispossessed of the leased premises at any time within three years from the date of this lease for any reason or upon any ground other than as the result of the default on the part of the said Lessee to do and perform the promises and agreements herein contained on his part to be done and performed, that the entire.................. proceeds derived from said life insurance policies, to-wit, the sum of Thirty Thousand Dollars, shall become the property of said Lessee and shall be paid by such Trustee to said Lessee, provided the same shall have come into the possession of the said Trustee or the right to collect the said life insurance policies or any part thereof shall have accrued to the said Trustee or the Lessee, and should such disposition of the Lessee occur subsequent to three years from this date and prior to six years from this date for the reasons or upon the grounds aforesaid, Twenty-five Thousand Dollars of the proceeds derived from said life insurance policies shall become the property of the said Lessee and shall be paid by said Trustee to said Lessee, provided the same shall have come into the possession of the said Trustee or the right to collect the said life insurance policies or any part thereof shall have accrued to the said Trustee or Lessee, and should dispossession of the Lessee occur subsequent to six years from this date and prior to nine years from this date, Twenty Thousand

Dollars of the proceeds derived from said life insurance policies shall become the property of the said Lessee and be paid by said Trustee to said Lessee, provided the same shall have come into the possession of the said Trustee or the right to collect the said life insurance policies or any part thereof shall have accrued to the said Trustee or the Lessee; and should such dispossession of said Lessee occur subsequent to nine years from this date and prior to twelve years from this date, Fifteen Thousand Dollars derived from the proceeds of said life insurance policies shall become the property of the Lessee and be paid by said Trustee to said Lessee, provided the same shall have come into the possession of the said Trustee or the right to collect the said life insurance policies or any part thereof shall have accrued to the said Trustee or the Lessee; and should such dispossession of said Lessee occur subsequent to twelve years from this date and at any time prior to fifteen years from this date, that Ten Thousand Dollars derived from the proceeds of said life insurance policies shall become the property of the Lessee and be paid by said Trustee to said Lessee, provided the same shall have come into the possession of the said Trustee or the right to collect the said life insurance policies or any part thereof shall have accrued to the said Trustee or the Lessee, it being agreed and understood by and between the parties hereto that the Lessee, contemporaneously with the execution of this lease is purchasing the stock of goods, wares and merchandise of E. C. Tibbetts and W. H. Tibbetts and the retail candy, cool drink and mercantile business of said E. C. Tibbetts and W. H. Tibbetts and the good will of such business now conducted on a part of the leased premises by the said E. C. Tibbetts and W. H. Tibbetts for a large amount of money, and that said Lessee intends to continue such business on a part of the leased premises and that the damages which would be sustained by said Lessee in the event of his dispossession from said leased premises at the periods of time hereinbefore designated in this paragraph for the payment of the insurance moneys from the proceeds derived from the life insurance policies of the said Lessor, Campbell Elmore Arnold, at any

time prior to fifteen years from this date are uncertain in amount and difficult of ascertainment, and the payments herein provided of such proceeds of moneys derived from such life insurance policies in the manner and times hereinbefore set forth are agreed upon as liquidated damages which will be sustained by said Lessee should the death of the said Campbell Elmore Arnold occur prior to the *first* day of July, A. D. 1936, and should the Lessee be dispossessed of and from said premises for that it be adjudged by a court of competent jurisdiction that the said Campbell Elmore Arnold only held a life estate in said demised premises, and the Lessee, his heirs or assigns be thereby dispossessed of the said premises; and the agreement that in such event the Lessee shall receive the proceeds of said life insurance policies in the amounts hereinbefore provided constitutes a part of the consideration for the execution of this instrument by the Lessee. And it is further agreed that the said Lessor, Campbell Elmore Arnold, will promptly pay the premiums on said life insurance policies as the same become due and payable, and should he not do so within ten days after the same become payable, at his option, the said Lessee may make payment of said premiums and deduct the amount of such premiums from the monthly rentals hereinbefore reserved, Provided, however, that after the expiration of three years from this date the said Lessor, Campbell Elmore Arnold, may at his option cancel one of said policies for five thousand dollars on his life; and at the expiration of six years from this date, may cancel another one of said life insurance policies; and at the expiration of nine years from this date, may cancel another one of said life insurance policies; and may, at the expiration of twelve years from this date cancel another one of said life insurance policies, and may, at the expiration of fifteen years from this date cancel the two remaining life insurance policies. And provided, further, that upon a final determination by the Supreme Court of the State of Florida, in the suit herein agreed to be instituted by the said Lessor, Campbell Elmore Arnold, the above quoted clause of the will of

the said Samintha Campbell, deceased, should be construed to give the said Campbell Elmore Arnold a fee simple estate absolute in and to all of the above described leased premises, or in the event the Circuit Court in which the aforesaid suit is to be brought should construe the above quoted language of the will of Samintha Campbell, deceased, so as to give the said Campbell Elmore Arnold a fee simple estate absolute in and to all of that described leased premises and that no appeal from such decree should be made to the Supreme Court of the State of Florida within the time allowed by law and rules of practice within which such appeals may be taken, then and in either event the Trustee to whom such life insurance policies are assigned shall forthwith execute a release of its interest in and to all of said life insurance policies and all rights, title and interest thereto of the said Lessee shall immediately cease and determine.''

The proper construction of the foregoing provisions of the lease is that the clause relating to the procuring of and depositing in trust policies of insurance was to protect the Lessee and purchaser of the stock of goods, the business and good-will conducted in the leased property from loss by reason of such interruption of the conduct of the business by the lessee as might occur at any time within fifteen (15) years by reason of the failure of the lease in the manner therein provided.

The answer of Cassie Ethel Arnold avers that this was the intent and purpose of that provision of the lease and she defends upon the allegations that Tibbetts Corner, Inc., prior to the death of Campbell Elmore Arnold, sold and disposed of the stock of goods and the retail business conducted in the leased property and that for this reason the damage contracted to be protected against by the procuring and depositing in trust of the insurance policies never accrued.

The record supports the answer.

In a suit based upon a contract purporting to provide

for liquidated damages the first question to be determined is, whether the sum mentioned in the contract is to be considered as liquidated damages or as a penalty merely. In Smith vs. Newell et al., 37 Fla. 147, 20 Sou. 249, this Court said:

"Whether the sum mentioned in a contract, to be paid upon a breach thereof, is to be considered as *liquidated* damages, or as a *penalty* merely, is always a *question of law for construction by the court*. For the solution of such question no fixed or general rule can be laid down for the government of all cases, but each case must be governed, in large measure, by its own facts and circumstances. Some general rules have become well established, however, for the guidance of the courts in solving the question whenever presented that will govern the construction to be placed upon all contracts whose distinguishing terms and provisions bring them within the limits of such fixed rules. Among the general rules of construction so fixed and established, there is none more unanimously settled and agreed upon by the courts than the following: 'A sum fixed as security for the performance of a contract containing a number of stipulations of widely different importance, breaches of some of which are capable of accurate valuation, for any of which the stipulated sum is an excessive compensation, is a penalty'."

In answering this question the Court must therefore consider: What was the character or nature of the damage which was contemplated by the parties and by the terms of the contract for which the obligated party is to be bound?

The rule to be applied when the Court shall have construed the contract is stated in Smith vs. Newell, et al., supra, as follows:

"If the sum mentioned in a contract to be paid for a breach thereof is construed to be *liquidated, stated* or *stipulated* damages, then it can be directly sued for and recovered as such in an action of debt or assumpsit; and, in such case, no proof is necessary on the plaintiff's

part of the sustainment of any *actual* loss or damage *by reason of* the breach, but he sues for and recovers such stipulated sum as upon a *special promise to pay that first sum.* All that is necessary to entitle the plaintiff to recover the *stipulated sum,* in such a case, is to show the breach of the contract upon which the payment thereof depends.

If, however, the sum mentioned in a contract to be paid upon a breach thereof, is construed to be merely a *penalty,* and not *liquidated* or *stipulated* damages, then the plaintiff must sue for the damage *actually resulting* from the breach, and not for the specific sum named as the penalty, and he must *allege* and *prove* not only the *breach* of the contract, but such other essential matters of fact as are necessary to show that he has sustained *actual* damage by such breach. In such a case he cannot recover any greater sum as damages than his proofs show him to have *actually* sustained in consequence of the breach. He is entitled in such a case, however, to recover *all* such damages as he proves himself to have *actually sustained* by the breach, whether they *exceed the amount of the penalty mentioned* in the contract or not. The amount of the *penalty* does not, in such cases, limit the amount of the recovery.''

The decree in the court below held in effect that the damage accrued upon the death of Arnold and the subsequent decree by the Circuit Court, which was afterwards affirmed by the Supreme Court, that Arnold only held a life estate in the property and that as the decree of the Circuit Court was entered within nine (9) years after July 1, 1921, Tibbetts Corner, Inc., was entitled to receive the $20,000.00 with increments thereon held in trust by First Savings & Trust Company of Tampa as proceeds from insurance policies on the life of Campbell Elmore Arnold.

Even if we could agree to the construction of the contract concerning the right to recover damages as placed thereon by the Chancellor, which in effect held it to warrant recovery for liquidated damages because of the

mere failure of the lease, we could not agree that Tibbetts Corner Inc. was entitled to $20,000.00, because the contract clearly contemplates and requires the ultimate disposition of the question by the Supreme Court and this question was not finally determined until December 16, 1930, and if the Chancellor's decree in other respects was correct, the final disposition of the question having been reached by the judgment of the Supreme Court, the mandate from which was filed in Circuit Court on December 16, 1930, the disposition as contemplated by the contract occurred Nine (9) years, five (5) months and sixteen (16) days after its execution and Tibbetts Corner, Inc. could only be entitled to $15,000.00 of the proceeds of the insurance policy with the increment thereon from the time that same came into the hands of the Trustee.

The record discloses, however, that the agreement as to the insurance policies and the proceeds thereof was made and entered into by the parties to protect the purchaser of the stock of goods and good-will from loss for a period of fifteen (15) years by reason of being deprived of the particular location in which to conduct its business; that the total consideration paid for the stock of merchandise and good-will was $25,000.00 while the amount of the penalty in case of the failure of the lease within three (3) years was to be $30,000.00 and if not within 3 years but within six (6) years $25,000.00, and if not within 6 years but within nine (9) years to be $20,000.00 and if not within 9 years but within twelve (12) years to be $15,000.00 and if not within twelve (12) years but within fifteen (15) years to be $10,000.00, which amounts appear to be grossly excessive when considered in connection with the value of the stock of goods and good-will, the enjoyment of which it was pledged to protect. In Greenblatt vs. McCall, 67 Fla.

164, 63 Sou. 748, in an opinion of this Court by Mr. Justice Whitfield, it was said:

"Whether the amount mentioned in a contract to be paid upon a breach thereof is to be considered as liquidated damages, or as a penalty merely, is a question of law for the court to determine from the nature of the contract, the terms and purpose of the whole instrument, the natural and ordinary consequences of a breach, and the peculiar circumstances attending each case as it arises.

The mere denomination of the sum to be paid as 'Liquidated damages' is not conclusive as to its real character and legal effect. When the agreement is to pay the same large sum for a partial as for a complete breach, the sum will be regarded as a penalty. Where the amount stated may easily be excessive with reference to the terms, nature and purpose of the contract, making it a matter held *in terrorem* over either party, it may be held a penalty, even though it be specifically designated as liquidated damages.

Where a fixed sum is named to secure the performance of a contract containing stipulations of widely differing importance, for any of which the stipulated sum is an excessive compensation, the designated sum may be regarded as a penalty. When the fixed amount is in law a penalty, the plaintiff must, among other essentials, allege and prove the damage actually resulting from the breach, and not merely claim the specific sum fixed in the contract. See Smith vs. Newell, 37 Fla. 147, 20 South. Rep. 249; Bradstreet v. Baker, 14 R. I. 546; Gillilan v. Rollins, 41 Neb. 540, 59 N. W. Rep. 893. See also 19 AM. & ENG. Ency. Law. (2nd ed.) 411; Condon v. Kemper, 47 Kan. 126, 27 Pac. Rep. 829, 13 L. R. A. 671.

In this case the fixed amount of two-thirds of the agreed charge for all goods the contract provided to be delivered during the remaining term of the said contract is plainly excessive as compensatory damages for a breach of the contract; and under the peculiar terms of the contract and circumstances of this case, the amount stipulated to be paid for a breach 'of any of

the terms or conditions of the contract' should be held to be in law a penalty and not liquidated damages, notwithstanding the designation of it in the contract."

Measuring this case by the rule established in this jurisdiction in Smith v. Newell, supra, and in Greenblatt vs. McCall, supra, we might hold that the amounts stipulated to be paid to Tibbetts Corner, Inc., constituted penalties.

The pleadings and proof not only fail to show any damage accruing to Tibbetts Corner, Inc. by reason of interruption of its retail mercantile business at the location involved, but show affirmatively that Tibbetts Corner, Inc. voluntarily by sale and transfer of its entire business at such location in the year 1925 placed itself in a position where it could not suffer damage by the interruption of its business thereafter. Therefore, it follows that whether the agreement be construed as providing for liquidated damages or for damages by way of penalty upon Tibbetts Corner, Inc. being deprived of the leased premises for the purpose of conducting the mercantile business referred to in the lease becomes immaterial because of two essential facts, first of which is: The contract itself contains the following provisions:

"contemporaneously with the execution of this lease is purchasing the stock of goods, wares and merchandise of E. C. Tibbetts and W. H. Tibbetts, and the retail candy, cool drink and mercantile business of said E. C. Tibbetts and W. H. Tibbetts and the good will of such business now conducted on a part of the leased premises by the said E. C. Tibbetts and W. H. Tibbetts for a large amount of money and that said Lessee intends to continue such business on a part of the leased premises and that the damages which would be sustained by said Lessee in the event of his dispossession from said leased premises at the periods of time hereinbefore designated in this paragraph for the payment of the insurance moneys from the proceeds derived from the life insurance policies of the said Lessor, Campbell El-

more Arnold, at any time prior to fifteen years from this date are uncertain in amount and difficult of moneys derived from such life insurance policies in the manner and times hereinbefore set forth are agreed upon as liquidated damages which will be sustained by said Lessee should the death of the said Campbell Elmore Arnold occur prior to the *first* day of July, A. D. 1936, and should the Lessee be dispossessed of and from said premises for that it be adjudged by a court of competent jurisdiction that the said Campbell Elmore Arnold only held a life estate in the said demised premises, and the Lessee, his heirs or assigns be thereby dispossessed, of the said premises; and the agreement that in such event the Lessee shall receive the proceeds of the said life insurance policies in the amounts hereinbefore provided constitutes a part of the consideration for the execution of this instrument by the Lessee.''

And the other is, as hereinbefore referred to: That in 1925 Tibbetts Corner, Inc. sold and disposed of the ''stock of goods, wares and merchandise and the retail candy, cool drink and mercantile business located and conducted on the leased premises'' and did not continue such business on any part of the leased premises after that date.

To recover under this contract it was necessary not only to show that Tibbetts Corner, Inc. was dispossessed of the leased premises by reason of the adjudication that Campbell Elmore Arnold was seized and possessed of a life estate only in such premises, but it was further necessary to show that by reason of such dispossession Tibbetts Corner, Inc. was precluded from continuing the conduct of its business on the leased premises. The enforced discontinuance by Tibbetts Corner, Inc. of its business on the leased premises is shown clearly by the contract to have been the thing which was sought to be protected against and contemplated in this provision of the contract and as this condition did not arise Tibbetts Corner, Inc. could not recover as for liquidated damages.

It may be further observed that the provision of the contract here under consideration did not inure to any sub-lessee or to any subsequent purchaser of the merchandise and retail business therein referred to.

Whether or not Tibbetts Corner, Inc. may recover any damages which it may have sustained by reason of the failure of the lease upon proof of such damage accruing is not here decided.

We hold here only that the provision in the contract relative to insurance policies and the proceeds thereof only contemplated such damage as might accrue to Tibbetts Corner, Inc. by reason of being deprived of its right to continue the operation of its then purchased retail mercantile business for a period of fifteen years on that location and that as Tibbetts Corner, Inc. sold and disposed of that business and ceased to conduct any such business at that place before the alleged cause of action accrued it cannot recover damages on that phase of the contract.

The principle here involved has been definitely settled in this jurisdiction in the case of Moses vs. Autuono, 56 Fla. 499, 47 Sou. 925, 20 L. R. A. (N. S.) 350, wherein this Court held:

"Where a contract expressly provides stipulated or liquidated damages for a particular breach of the contract, and the breach alleged is not the one provided for or contemplated in fixing the measure of damages, the loss, if any, sustained by the plaintiff because of the alleged breach of contract should be determined not by the stipulation contained in the contract, but by the law."

For the reasons stated, the judgment is reversed. It is so ordered.

Reversed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.

---

ON REHEARING.

Opinion filed May 17, 1932.

PER CURIAM.—In this case petition has been filed for a rehearing. The petition cites certain inaccuracies appearing in the original petition such as the statement, ''The Arnolds sold to the VanDykes and the corporation to be incorporated, etc.'', when it appears that the Tibbetts sold to the VanDykes and not the Arnolds. That the opinion assumes that the Arnolds theretofore conducted the retail business when in fact it was the Tibbetts. That the business of Tibbetts was located ''in *the* store on the property leased'' when it should have said in *a* store, all of which is quite immaterial so far as the merits of the case are concerned.

It is also pointed out in the motion for rehearing that because the mercantile business referred to in the original opinion only occupied a small portion of the leased premises the conclusions reached in the opinion were erroneous and it is further contended that the action of the parties showed that the parties to the lease and the contract put a different construction upon its terms than that which is placed upon it by the Court.

It is elementary law that a contract will be construed according to its own clear and unambiguous terms and that the construction placed upon it by the parties thereto is relevant only in determining the proper construction of a contract when the provisions thereof are ambiguous. If the contract is clear and unambiguous the legal construction of it follows regardless of what construction may apparently have been placed upon it by the parties. See Peoples Savings Bank & Trust Co. vs. Landstreet, 80 Fla. 853, 87 Sou. 227. The contract itself contains the

provision quoted in the original opinion which is entirely unambiguous in its showing that a material element of the damage sought to be stipulated against was the loss which would be sustained by the discontinuance of the lessee's business at Tibbetts Corner in the event of the termination of the lease by the death of Arnold within fifteen years from the date thereof.

In Greenblatt vs. McCall, 67 Fla. 165, 64 Sou. 748, this Court, speaking through Mr. Justice Whitfield, said:

"Where a fixed sum is named to secure the performance of a contract containing stipulations of widely differing importance, for any of which the stipulated sum is an excessive compensation, the designated sum may be regarded as a penalty. When the fixed amount is in law a penalty, the plaintiff must, among other essentials, allege and prove the damage actually resulting from the breach, and not merely claim the specific sum fixed in the contract. See Smith vs. Newell, 37 Fla. 147, 20 South. Rep. 249; Bradstreet vs. Baker, 14 R. I. 546; Gillilan vs. Rollins, 41 Neb. 540, 59 N. W. Rep. 893. See also 19 Am. & Eng. Ency. Law. (2nd Ed.) 411; Condon vs. Kemper, 47 Kan. 126, 27 Pac. 829, 13 L. R. A. 671."

Therefore, if we concede that a part, or even a major part, of the loss contemplated in the stipulation for liquidated damage was the termination of the lease as to the premises exclusive of the store used for the continuance of the mercantile business, the unambiguous provision of the contract remains fixing a part of the contemplated loss to be sustained by reason of the discontinuance of the mercantile business and as no loss was sustained by reason of the discontinuance of the mercantile business, the mercantile business having been sold and delivered to other parties long prior to the termination of the lease without any recourse upon the vendors of that business to the vendees thereof in the event of the termination of the lease, the contract for liquidated damages cannot be

enforced so as to be made to apply to the other damages contemplated by the contract which may have accrued by reason of the termination thereof, and the rule above quoted from the case of Greenblatt vs. McCall, supra, applies, with the result that the assignees of the leasees of Arnold may maintain an action against the estate of Arnold for such damage as they may be able to actually prove resulting from a breach of the contract.

Therefore, the petition for rehearing is denied.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., dissent.