Howard M. HOOK, Appellant,

v.

Thomas J. BOMAR, as Trustee for Kitimat Corporation, Appellee.

No. 20063.

United States Court of Appeals Fifth Circuit.

July 24, 1963.

Rehearing Denied Sept. 12, 1963.

H. T. Maloney, Patterson & Maloney, Fort Lauderdale, Fla., for appellant.

Thomas B. DeWolf, David P. Karcher, Helliwell, Melrose & DeWolf, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

JONES, Circuit Judge.

Kitimat Corporation filed a reorganization petition under Chapter X of the Bankruptcy Act. Thomas J. Bomar was appointed Trustee of the property and assets of the debtor Kitimat Corporation. This controversy was referred to the Referee as Special Master. The nature of the controversy and the factual situation from which it arose are set forth in the Special Master's Report. The appellant and the appellee are in agreement as to the correctness of the facts as found by the Special Master. The Master's findings and conclusions appear in the margin.[1] Objections of the Trustee to the

Findings of Fact.

1. On or about May 2nd, 1958, the Debtor Corporation entered into a "Sales Agreement" (Petitioner's Exhibit #1) with Howard M. Hook and Lilyan B. Hook, and Hook Construction Company wherein and whereby the Debtor Corporation agreed to purchase certain real property situate in Broward County, Florida, described as:

> The West 20 feet of Lot 1, and the East 30 feet of Lot 2 of a Resubdivision of Block 13, and a part of Block A of IDLEWYLD, according to the Plat thereof, recorded in Plat Book 7, at Page 38, of the Public Records of Broward County, Florida, subject to the rights of the holders of leases;

from the Hooks for a total purchase price of Ninety-five Thousand ($95,000.00) Dollars.

2. The purchase price for the said property was to be paid as follows:

(a) Ten Thousand ($10,000.00) Dollars Cash upon the execution of the Agreement.

(b) Thirty-Five Thousand ($35,000.00) Dollars payable in monthly installments of Five Thousand ($5,000.00) Dollars each, beginning on the second day of June, 1958, and continuing on the second day of each month thereafter, until seven (7) of such installments had been paid;

(c) The balance of the purchase price would be secured by a mortgage in the sum of Fifty Thousand ($50,000.00) Dollars, payable in monthly installments of Five Thousand ($5,000.00) Dollars each.

Under this Agreement, Hook was to convey the property to a corporation, Hook Construction Corporation and upon payment of the total sum of Forty-Five Thousand ($45,000.00) Dollars under the Sales Agreement, the Corporation was to execute a Warranty Deed to the Debtor Corporation and take back a mortgage for the balance of the purchase price, to-wit: Fifty Thousand ($50,000.00) Dollars.

3. Paragraph 11 of the Sales Agreement reads as follows:

> "Should the buyer default in its performance of this Agreement and fail to pay the purchase monies when due or perform other acts under this Agreement, then the Sellers may, at their election, declare this Agreement null and void and shall retain all sums paid pursuant hereto as agreed in liquidated damages; in which event the corporation shall, at the request of the sellers, reconvey the above described property back to the sellers."

4. Pursuant to this Agreement Hook conveyed the above described property to Hook Construction Corporation and the deed from Hook Construction Corporation to the Debtor corporation was drawn up as well as the mortgage and promissory note, and all of these documents were placed in the hands of an escrow agent, The Broward National Bank of Fort Lauderdale.

5. Pursuant to the Agreement the Debtor Corporation paid to Hook the sum of Ten Thousand ($10,000.00) Dollars at the time of closing the transaction and subsequently made four (4) of the monthly payments of Five Thousand ($5,000.00)

Special Master's Report were sustained by the district court. In its order, the district court stated that the retention of the sums paid, absent proof of damages, would be a forfeiture and a penalty so shocking to the judicial conscience as not to be sustained. Hook has taken this appeal. Both parties urge that the Florida precedents sustain their contentions.

In 1948 the Supreme Court of Florida had before it a case where the purchaser had defaulted in the performance of a contract of sale and purchase of real property for a consideration of $67,500. Receipt by the vendor of earnest money in the amount of $6,200 was acknowledged. The contract provided, among other things, that in case of default by the purchaser, and at the option of the vendor, the contract should be terminated and "the purchaser shall forfeit said earnest money, and the same shall be retained by the seller as liquidated damages." The purchaser stopped payment on the $6,200 check he had given in mak-

---

Dollars each on June 10, 1958, July 8, 1958, August 4, 1958 and September 25, 1958, for a total sum paid under the contract of Thirty Thousand ($30,000.00) Dollars.

6. After September 25, 1958, no other payments were made by the Debtor Corporation on the contract.

7. On May 12, 1959, the attorney for Hook wrote a letter (Petitioner's Exhibit #3) to the Broward National Bank requesting the return of the deeds because of the failure of the Debtor to carry out the agreement.

8. On 15 May, 1959, the Broward National Bank wrote Mr. Joseph Hamilton, Secretary, for the Debtor (Petitioner's Exhibit #4) a letter advising of the receipt of the letter from the attorney for the Petitioner and advising that on May 20, 1959, the Bank would return the deeds to the Petitioner and the note and mortgage to the Debtor.

9. On May 29, 1959, the Broward National Bank wrote the Debtor another letter (Petitioner's Exhibit #5) advising that the deeds had been returned to Hook and that if the Secretary for the Debtor would call by the Bank the note and mortgage would be returned to the Debtor.

10. The deeds were returned on May 20, 1959, to the Petitioner, and on June 8, 1959, the Debtor wrote the Broward National Bank and the attorney for the Petitioner that the Debtor would proceed to legal recourse against the Bank and the lawyer for removing the deeds without their consent. Thereafter the Debtor filed a petition in bankruptcy which is presently still pending.

11. Hook retained the Thirty Thousand ($30,000.00) Dollars previously paid under the contract.

12. On December 5th, 1960, the Trustee and the attorney for Hook entered into a Stipulation wherein and whereby the Trustee released any right to performance of a Contract and any interest in the real property, which was the subject of the Contract. This Stipulation limited the issues before the Special Master to the question of whether the amount of Thirty Thousand ($30,000.00) Dollars paid under the contract by the Debtor Corporation, prior to the termination of the contract, may be retained by Howard M. Hook as liquidated damages, or whether the Trustee is entitled to a return of said sums or any portion thereof.

13. At the time the contract was in effect the real estate involved was under lease, as appears from the contract, and since the Debtor Corporation never acquired title to the property the lease payments were being made to Hook.

14. There was no evidence that Hook contemplated that he would suffer any damages as a result of the failure of the Debtor Corporation to complete the contract and there is no evidence that Hook did in fact suffer any damages as a result of the Debtor's failure to complete the transaction.

Conclusions of Law

1. It is the conclusion of the Special Master that the contract between Howard M. Hook and the Debtor Corporation constituted a contract in the nature of an Agreement for Deed and that the Debtor Corporation defaulted in the terms of the Agreement by failing to pay the full amount of Forty-Five Thousand ($45,000.00) Dollars which would have entitled it to receive a deed from Hook under the Agreement.

2. Since the Debtor Corporation failed to perform the conditions of the "Agreement for Deed" the right to any amount paid by it under said Agreement was terminated.

3. The Trustee of the Debtor Corporation is not entitled to a return of any part of the said sum of Thirty Thousand ($30,000.00) Dollars paid in under the Agreement for Deed.

ing his earnest money payment and the vendor brought suit for the amount it represented. The statements by the court have declared the principles by which the Florida courts have been guided in like cases. We therefore set forth in extenso these principles thus stated:

"Whether the sum stipulated in a contract to be paid in the event of a breach will be considered as a penalty or as liquidated damages is always a question of law to be determined by the court in each particular case. The real purpose in permitting a stipulation for damages to stand as compensation for a breach being 'to render certain and definite that which appears to be uncertain and not easily susceptible of proof', Chace v. Johnson, 98 Fla. 118, 123 So. 519, 521, the fact that a stipulation denominates a sum to be paid for breach of a contract as 'liquidated damages' or as a 'penalty' will not in and of itself be conclusive. The courts will always look to the nature of the contract, the terms and purposes of the whole instrument, the natural and ordinary consequences of a breach and the peculiar circumstances attending each case, to determine its real character and purpose. [Authorities cited].

"Though no fixed or settled rule can be stated by which the courts may always determine whether a stipulation for the payment of a fixed sum should be treated as a penalty or as liquidated damages, there appears to run throughout the many cases in which the question has been considered the following controlling principle: Where compensation for injury resulting from a breach of contract is reasonably susceptible of measurement by some adequate and approved legal standard, a stipulation providing for the payment of an amount which may easily be excessive with reference to the terms, nature, and purpose of the contract, making it a matter held in terrorem over either party, should be construed as a penalty, even though it be specifically designated as liquidated damages. Greenblatt v. McCall & Co., 67 Fla. 165, 64 So. 748. Where the actual damages contemplated when the contract was made are in their nature uncertain and may so depend upon extrinsic considerations and circumstances as to be incapable of ascertainment with any reasonable degree of exactness, and the fixed sum stipulated to be paid is not disproportionate to the probable injury likely to result from a breach of the contract, effect should be given to the stipulation as one for liquidated damages, without regard to its designation or the amount of injury actually suffered as the result of the breach. Southern Menhaden Co. v. How, 71 Fla. 128, 70 So. 1000. [Authorities cited]

"All this is but another way of saying that in the final determination of the question whether or not a stipulation should be construed as providing for a penalty or for liquidated damages the guiding principle for the courts to observe should be that of 'just compensation' for injury resulting from the breach of the contract, and the controlling object should be to place the injured party in as advantageous position as he would have occupied had his contract not been broken. So long as the contracting parties keep this principle in view the courts will very generally allow them to agree upon such a sum as will probably be the fair compensation for the breach of a contract. But when they go beyond this and undertake to stipulate not for compensation but for a sum entirely disproportionate to the measure of liability which the law regards as compensatory, the courts will refuse to give effect to the stipulation and will confine the parties to such actual damages as may be pleaded and proved. [Authorities cited].

"In every case involving a contract providing for a fixed sum to be paid in the event of a breach the real issue involved, therefore, is whether the contract adheres to the fundamental rule of 'just compensation' which we have stated and whether the parties intend that the sum named shall be paid over to the injured party for the particular breach which has occurred. Moses v. Autuono, 56 Fla. 499, 47 So. 925, 20 L.R.A.,N.S., 350; Arnold v. First Savings & Trust Co. of Tampa, 104 Fla. 545, 140 So. 660, 141 So. 608.

"Under the contract involved in this appeal the parties agreed that the appellees should pay as the purchase price of the property the sum of $67,500.00. They agreed that the appellees, at the time they signed the contract of purchase, should pay the sum of $6200.00 'as earnest money and in part payment on account of the purchase price' and should pay the balance of the purchase price at the closing of the transaction. They agreed that in payment of the balance of the purchase price the appellees should assume two subsisting mortgages of the face amount of $26,900.00 at their then rates of interest and amortization payments, and pay in cash the sum of $34,400.-00. They agreed that possession of the property should not be surrendered to the appellees until the passing of title. They agreed that the transaction should be closed and that the appellees should pay the balance of the money due under the contract, and execute all papers necessary for the completion of the purchase within five days from the delivery of abstract of title or title insurance commitment. Finally, they agreed that time should be of the essence of the contract and that if the appellees failed 'to make either of the payments, or any of the covenants on [their] part entered into', the 'earnest money' should be forfeited and retained by the sellers as liquidated damages.

"In our view the contract clearly provided for a penalty and not for liquidated damages.

"There was nothing in the transaction which could have rendered the damages which might reasonably have been expected to flow from a breach of the contract uncertain, conjectural or speculative. The only real damages which could have been sustained by the sellers as the result of the purchasers failing to go through with the contract were the profits to be realized from the sale. As to these, they were definitely ascertainable in accordance with settled legal principles for the admeasurement of damages; the measure of the sellers' damage ordinarily being in such cases the difference between the agreed purchase price and the actual value of the property at the time of the breach of the contract of purchase, less the amount paid. [Authorities cited]." Pembroke v. Caudill, 160 Fla. 538, 37 So. 2d 538, 540–541, 6 A.L.R.2d 1395.

The primary reliance of the appellants is placed upon Beatty v. Flannery, 49 So.2d 81, decided by the Supreme Court of Florida in 1950. There, a $3,000 deposit had been made on a $30,000 purchase. After default, the purchaser brought suit for the earnest money paid, pointing to Pembroke v. Caudill, supra, in support of its claim. The vendor denied that the Pembroke decision was controlling and argued that the prior decisions of the Florida court required a judgment for the vendor. In adopting the vendor's contention, the court said:

"It is well settled that, even in the absence of such a forfeiture provision, a vendee in default is not entitled to recover from the vendor money paid in part performance of an executory contract." 49 So.2d 81, 82.

In the opinion the court also stated:

"We recognize that there are exceptions to the general rule that a vendee in default cannot recover, but we find no such circumstances in this case. There was no intimation of fraud on the part of the vendor, nor that the vendee's failure to fulfill the contract was due to any misfortune beyond his control that gave the vendor a benefit, the retention of which was shocking to the conscience of the court. Nor is it here contended that there was a mutual rescission of the contract." 49 So.2d 81, 82.

The court distinguished the Pembroke decision on the ground that it was a case where the vendor was seeking to recover and not, as in Beatty v. Flannery, a situation where the purchaser was seeking to recover.

Three years after Beatty v. Flannery the Supreme Court of Florida decided Haas v. Crisp Realty Co., Fla., 65 So.2d 765. There the action was brought by the purchasers to recover a down payment of $6,050 on a total purchase price of $15,550. The purchasers were unable to perform the contract and complete the purchase because the insufficiency of their income and resources prevented them from qualifying for an F.H.A. mortgage loan on the property they had agreed to purchase. The court observed the absence of any showing in Beatty v. Flannery that the purchaser's failure to perform was due to any misfortune beyond his control that gave the vendor a benefit, the retention of which was shocking to the conscience of the court. The absence of income and resources of Kitimat Corporation were as unfortunate as those of the purchasers in the Haas case. In each the unfortunate circumstance was the inadequacy of the financial position of the purchasers. The ratio here between down payment and purchase price is greater than in Pembroke although less than in Haas. We think the district court was fully justified in its conclusion that the forfeiture constituted such a penalty as to shock the judicial conscience. Cf. O'Neill v. Broadview,

Inc., Fla.App., 112 So.2d 280. The district court directed, as was done in the Haas case, that the cause be remanded for the taking of proof as to the actual damages sustained by the vendor. This was a proper disposition of the matter. The judgment of the district court is

Affirmed.